UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

Case No. 9:12-cv-81120-HURLEY/HOPKINS

ADT LLC,

    Plaintiff,

        v.

SECURITY NETWORKS, LLC, and
VISION SECURITY, LLC,

    Defendants.
_____/

**NON-PARTY ROBERT HARRIS'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO ADJUDGE NON-PARTIES IN CONTEMPT OF THE PERMANENT INJUNCTION**

    NOW COMES Non-Party Robert Harris, by his attorneys, with these objections to Magistrate Judge James M. Hopkins' Report and Recommendation Regarding Plaintiff's Motion to Adjudge Non-Parties in Contempt of the Permanent Injunction [DE 146]. In support thereof, Mr. Harris states:

**INTRODUCTION**

    Mr. Harris hereby joins in and adopts the objections contemporaneously filed by non-party NorthStar Alarm Services. In addition to adopting NorthStar's objections, Mr. Harris submits this separate brief to highlight an important error in Magistrate Judge Hopkin's Report and Recommendation (the "Report"): The Magistrate Judge misapplied state successor liability law to the Federal court Vision injunction (the "Injunction").[1]

---

[1] The last part of the Report recommends finding that Mr. Harris is bound by the Injunction. Mr. Harris has never contended otherwise. As he previously acknowledged to the Magistrate Judge, Mr. Harris is the CEO of Vision, and in such capacity is bound by the Injunction. (See DE 123 at 4).

{6206688:}

# ARGUMENT

**1) The Magistrate Judge Misconstrued Successor Liability Law
In the Context of Federal Court Injunctions.**

Implicit in the Magistrate Judge's ruling is the assumption that a corporation that *de facto* merges with an enjoined party is necessarily bound by the injunction. (Report at 6 and 10.) This is not a proper standard for holding a non-party bound by a Federal court injunction. The Supreme Court has held that "successors…*may* come within the description of persons" bound by an injunction. *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (emphasis added). The Magistrate Judge effectively deleted "may" from the Supreme Court's pronouncement in *Regal Knitwear*. This was an incorrect interpretation of the law, as not all corporate successors are bound by a predecessor's injunction. *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 262 n.9 (1974). ("A new employer, in other words, may be a successor for some purposes and not for others.")

In the Rule 65(d) context, a court may not hold a successor to an enjoined defendant bound by the injunction unless "there is a 'substantial continuity of identity' between the two organizations." *Additive Controls & Measurement Sys. v. Flowdata*, 154 F.3d 1345, 1355 (Fed. Cir. 1998) (citing *Howard Johnson*, 417 U.S. at 263) ("[T]he 'substantial continuity of identity' test has been adopted as a general expression of the degree of closeness that Rule 65(d) requires for a non-party successor to be subject to the injunction."). *See also, Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir. 1996) (Extending an injunction to a nonparty, and noting, "The critical inquiry is whether there is substantial continuity of identity between the two organizations.")

It is true that one Federal court previously conducted state law successor liability analysis when considering whether to extend an injunction to a non-party. *Marshak v. Treadwell*, 595

F.3d 478 (3d Cir. 2009). However, in that case the court identified factors in addition to a finding of corporate successorship to justify extending a Federal court injunction. *Marshak*, 595 F.3d at 490 (Finding no clear error in district court's determination that defendant was the successor corporation to an enjoined party *and* had been formed for the purpose of allowing the predecessor's owner to evade the injunction.). *Cf. Combs v. Ryan's Coal Co.*, 785 F.2d 970, 973 - 74 (11th Cir. 1986) (Non-Rule 65(d) case in which court enforced consent agreement against a successor corporation that had the same majority owner, CEO and president/general manager as its enjoined predecessor, such that the former was deemed the *alter ego* of the latter.). The Magistrate Judge made no such additional findings here, but rather mistakenly believed that a finding of successor liability under any state law standard, without more and untethered to Rule 65(d), is sufficient to extend a Federal court injunction to a non-party.

None of the *de facto* merger cases relied upon by the Magistrate Judge to find successor liability concerned an injunction. (See Report at 7 – 10.) By relying on *de facto* merger cases outside of the context of injunctions and Rule 65(d), the Magistrate Judge dropped the 'substantial continuity' Rule 65(d) test in favor of a lower, "some continuity" test found in certain (but not all) successor liability cases concerning debt actions and the like. (Report at 9.)[2] But the courts in those cases were not constrained by Rule 65(d) and related precedent. Applying the proper, Rule 65(d) substantial continuity standard, as this Court must, demonstrates that NorthStar was not a successor to Vision for purposes of extending the Injunction.[3]

---

[2] The Magistrate Judge relied upon the following cases concerning *de facto* merger analysis: *Bud Antle v. Eastern Foods, Inc.*, 758 F.2d 1451 (11th Cir. 1985) (debt action); *Coral Windows Bahamas v. Pande Pane*, 2013 WL 321584 (S.D.Fla.) (breach of contract); *United State v. Gen. Battery Corp.*, 423 F.3d 294 (3d Cir. 2005) (CERCLA); *Murphy v. Blackjet*, 2016 WL 3017224 (S.D. Fla.) (supplementary proceedings); *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145 (Fla. Dist. Ct. App. 1994) (breach of employment contract).

[3] Mr. Harris was unable to find any case in which a court extended a Federal Court injunction based solely on a finding of a *de facto* merger under state law.

**2) There is Not a Substantial Continuity of Ownership, Management and Personnel between Vision and NorthStar.**

Continuity of ownership and continuity of management and personnel are two elements of a *de facto* merger under state law. *Bud Antle v. Eastern Foods, Inc.*, 785 F.2d 1451, 1457-58 (11th Cir. 1985). As noted by the Magistrate Judge, Vision owner Rob Harris has an interest in a trust that owns 14% of NorthStar after the APA. While this may be *some* continuity of ownership, as found by the Magistrate Judge, by no stretch of the imagination can it be deemed *substantial* continuity of ownership, as required by Rule 65(d) and applicable Federal case law in order to extend an injunction to a nonparty. Indeed, the Magistrate Judge only found that there is some overlapping ownership; he did not find substantial overlapping ownership. (Report at 9.) This fact alone requires this Court to reject the Magistrate Judge's recommendation.

Similarly, while there is some continuity of management and personnel, there is not substantial continuity:

- Seven of NorthStar's eight directors have no past or present affiliation with Vision. (Transcript at 91:3-16[4])

- Five NorthStar's seven executives, including the CEO Jason Christensen, have never worked for or been affiliated with Vision. (See Transcript at 65:11-24 and 20:23 – 21:14; Plaintiff's Exhibit #2).

- NorthStar uses 30 to 35 of the 250 Vision pre-APA sales representatives (14%), and employs half of the 70 pre-APA Vision employees. (Transcript at 25:9-11; 52:21 – 53:3).[5] Other than Messrs. Harris and Noble and two others, none of these employees were promised NorthStar employment or obligated to join NorthStar. (Ex. 1 at § 5.4 (a) and (c)). Rather, they voluntarily joined NorthStar after the APA closed.

The Magistrate Judge termed this modest overlap in management and personnel "significant." (Report at 8.) Given that he was not concerned with the substantial continuity standard of Rule

---

[4] The Transcript of the evidentiary hearing below is attached to NorthStar's Objections at Exhibit A.

[5] Half of NorthStar's regional managers are former Vision regional managers. (Transcript at 24:12-17).

{6206688:}  4

65(d), it is unlikely he intended "significant" to mean substantial, but to the extent he did, the Magistrate Judge was clearly wrong.

Not surprisingly, the instances where courts have held nonparties in contempt of an injunction typically involve substantial overlapping ownership and management/personnel between the nonparty and the enjoined party, and an intent to evade the injunction.  See, e.g., *Combs*, 785 F.2d 970 (Holding in contempt 80% owner and CEO of enjoined company and a separate company he owned and operated and to which he transferred the assets of the enjoined company necessary for that company to comply with a consent agreement.); *Panther Pumps & Equipment v. Hyrdrocraft*, 566 F.2d 8 (7th Cir. 1977) (Holding in contempt 33% owner of enjoined company that caused the assets of the enjoined company to be transferred for little or no consideration to a new company he formed, owned and controlled for purposes of manufacturing device that was the subject of the injunction and finding the new company to be successor to enjoined company.); *Additive Controls & Measurement Sys. v. Flowdata*, 154 F.3d 1345 (Fed. Cir. 1998) (Holding in contempt 90% owner and president of enjoined company that formed and managed new company, which operated out of his home, for purposes of developing and marketing the device that was the subject of the injunction.)

The facts of this case are clearly distinguishable from the above typical cases finding nonparty contempt in at least five ways:  First, Mr. Harris, the owner and CEO of Vision, did not found NorthStar; rather, as the Magistrate Judge noted, NorthStar has existed since 2000 and was much bigger than Vision at the time of the APA. (Report at 6.)  Second, Mr. Harris does not own or control NorthStar, rather he has an indirect interest in 14% of NorthStar and now works at NorthStar subordinate to, and taking direction from, the CEO. (Report at 3 and Transcript at 65:8 – 14.) Ultimately, NorthStar is controlled by its eight member board of directors, seven of whom

have no affiliation with Vision or Mr. Harris. (Transcript at 91:3-16.) Third, Vision remains in business, generating revenue. (Transcript at 18:9 – 19:7, 21:3-6, 63:23 – 64:3.) Fourth, Mr. Harris has not engaged in the allegedly deceptive sales practices that are the subject of ADT's Petition. The evidence shows that Mr. Harris does not train or manage the NorthStar sales representatives or the compliance department, and ADT alleges that the NorthStar sales representatives were already engaged in the allegedly deceptive sales practices addressed in the Injunction *before* Mr. Harris joined NorthStar. (Report at 4 and fn 5; Transcript at 64:23 – 65:10; DE # 108 at 5.) Fifth, there is no evidence that Mr. Harris or Vision entered into the APA in order to evade the injunction while continuing Vision's business. In fact, the Magistrate Judge barred any testimony concerning intent. (Transcript at 66:9-12)

The facts of the Vision – NorthStar APA do not warrant extending the Injunction to NorthStar.

## CONCLUSION

The Magistrate Judge did not, and could not, find substantial continuity of ownership, management and personnel between Vision and NorthStar, and therefore should not have recommended extending the Vision Injunction to NorthStar. For this reason, and all the reasons identified in the NorthStar Objections, this Court should reject that part of the Magistrate Judge's recommendation finding NorthStar bound by the Injunction, and deny ADT's contempt motion.

Dated July 1, 2016                                              Respectfully submitted,

/s/ Jeremy R. Bloor                                             /s/ John M. O'Bryan
Peter M. Bernhardt                                              John M. O'Bryan
Florida Bar No.: 969771                                         *Admitted Pro Hac Vice*
Jeremy R. Bloor                                                 **Freeborn & Peters, LLP**
Fla Bar No. 71497                                               311 S. Wacker Drive, Suite 3000
**MCDONALD HOPKINS LLC**                                        Chicago, IL 60660
505 South Flagler Drive Suite 300                               Tel: (312) 360-6000
West Palm Beach, FL 33401                                       Fax: (312) 360-6520
Telephone (561) 472-2121                                        *Attorney for Non-Party Robert Harris*
Facsimile (561) 472-2122
*Attorney for Non-Party Robert Harris*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of July 2016, I caused a true and correct of the foregoing to be served by the CM/ECF service to counsel of record as listed below:

*Counsel for ADT LLC*
C. Sanders McNew, Esq.
McNew P.A.
2385 NW Executive Center Drive
Suite 100
Boca Raton, FL 33431
Tel:  (561) 299-0257
Fax: (561) 299-3705
Email:  mcnew@mcnew.net

*Counsel for Security Networks, LLC*
Scott W. Atherton, Esq.
Harris Seth Nizel, Esq.
Atherton Law Group, P.A.
224 Datura Street , Suite 815
West Palm Beach, FL 33401
Tel:  (561) 293-2530
Fax: (561) 293-2593
Email: scott@athertonlg.com
Email: harris@athertonlg.com

*Counsel for Non-Party NorthStar Alarm Services LLC*
Matthey Chait, Esq.
Eric Christu, Esq.
Jonathan P. Hart, Esq.
Shutts & Bowen, LLP
525 Okeechobee Boulevard,
Suite 1100
West Palm Beach, FL 33401
Telephone:  (561) 835-8500
Facsimile:   (561) 650-8530
Email: mchait@shutts.com
Email: echristu@shutts.com
Email: jhart@shutts.com

*/s/ Jeremy Bloor*
Counsel for Mr. Robert Harris