UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 12-81120-CIV-Dimitrouleas/Matthewman

ADT, LLC,

     Plaintiff,

vs.

SECURITY NETWORKS, LLC, and
VISION SECURITY, LLC,

     Defendant.

_____/



FILED by _____ D.C.

NOV 1 6 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE ISSUE OF NORTHSTAR'S KNOWLEDGE OF THE INJUNCTION

THIS CAUSE is before the Court upon a referral from the Honorable William P. Dimitrouleas, United States District Judge. [DE 355]. The referral relates to the limited issue of NorthStar's knowledge of the injunction. Specifically, the referral required the undersigned to conduct an evidentiary hearing on the issue of "whether NorthStar had actual notice of the injunction as required by Fed. R. Civ. P. 65(d), prior to the actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt against NorthStar." *Id.* at p. 12. The Court held an evidentiary hearing on July 28, 2018. The Court has also reviewed the parties' post-hearing briefs, exhibits, and designations and cross-designations. The matter is now ripe for review.

## I.    BACKGROUND

This case has a very lengthy and circuitous history. On October 12, 2012, Plaintiff ADT ("ADT") filed a Complaint for damages and injunctive relief against Defendants Security

1

Networks LLC ("Security Networks") and Vision Security, LLC ("Vision").   [DE 1].   The Court entered a Stipulated Preliminary Injunction against Defendants on December 14, 2012. [DE 38].   ADT filed an Amended Complaint on June 28, 2013.   [DE 59].   In the Amended Complaint, ADT alleged that Security Networks' and Vision's agents were interfering with ADT's contracts with customers by making false and misleading statements intended to confuse ADT's customers, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Florida Deceptive and Unfair Trade Practices Act, section 501.201 et seq., Florida Statutes, as well as ADT's rights against interference with its contracts under Florida common law.   *Id.*

On August 26, 2013, the parties announced that they had agreed to settle the case.   [DE 102].   On September 9, 2013, ADT, Security Networks, and Vision filed a Joint Motion to Dismiss the Case with Prejudice and Related Relief [DE 104].   The parties moved the Court to enter an Agreed Permanent Injunction with respect to Vision [DE 104-1], dissolve the preliminary injunction, dismiss the action with prejudice, and expunge certain documents from the docket.   [DE 104].   On September 11, 2013, the Honorable Daniel T. K. Hurley, United States District Judge, entered the Agreed Permanent Injunction with respect to Vision.   [DE 105].[1]   Judge Hurley also entered an Order of Final Dismissal and Close-Out, dismissing the case with prejudice, dissolving the previously entered preliminary injunction, retaining jurisdiction to enforce the terms of the parties' settlement agreement and the permanent injunction, and denying the request to expunge.   [DE 106].   On December 17, 2014, the Court entered an Order Modifying Agreed Permanent Injunction, which made minor revisions to the Agreed Permanent Injunction.   [DE 107].

On December 11, 2015, ADT filed a Motion for Order to Show Cause Why Nonparties

---

[1] Judge Hurley is now retired from the Court.

2

Robert Harris and NorthStar Alarm Services LLC ("NorthStar") Ought Not Be Adjudged in Contempt of the Permanent Injunction Entered in this case.   [DE 108].   ADT sought to hold the two nonparties in contempt of the permanent injunction for allegedly using the prohibited misleading and deceptive sales practices to steal ADT's customers.   *Id.*   ADT claimed that NorthStar and Harris were successors in interest to Vision based upon a January 2015 Asset Purchase Agreement ("APA"), whereby NorthStar purchased approximately 8,000 customer accounts from Vision and also employed many of Vision's senior officers, managers, and sales agents.   *Id.*   Harris, NorthStar's president, was also Vision's CEO and sole managing member. *Id.*

NorthStar and Harris denied that they could be bound by the permanent injunction and claimed they were outside the scope of the injunction.   [DEs 122, 123].   The Honorable James M. Hopkins, United States Magistrate Judge, held an evidentiary hearing on January 14, 2016, and heard testimony from Harris and Jason Christensen, NorthStar's founder and CEO.   [DEs 138, 141].   The parties agreed to bifurcate the proceedings so that the Court could first determine the applicability of the permanent injunction to the non-parties and then, during a second stage, determine if the injunction was violated.   *Id.*   The parties completed additional briefing.   [DEs 142-144].   Then, on June 8, 2016, Judge Hopkins entered a Report and Recommendation Regarding Plaintiff's Motion to Adjudge Non-Parties in Contempt of the Permanent Injunction.   [DE 146].[2]   Judge Hopkins found that ADT had shown by clear and convincing evidence that the "APA resulted in a de facto merger between Vision and NorthStar such that liability under the injunction should attach to NorthStar as a successor in interest." [DE 146, p. 6].   He also found that Harris was "bound by the injunction and thus, if he engaged

---

[2] Judge Hopkins is now retired from the Court.

in conduct violative of the injunction, he would be liable under it." *Id.*   Judge Hopkins rejected ADT's argument that there was sufficient privity between Vision and NorthStar to justify extending the injunction's prohibitions to NorthStar, but he found merit in ADT's argument that NorthStar was liable as a successor in interest of Vision.   *Id.* at pp. 6-10.   Judge Hopkins found that the record was replete with evidence that a de facto merger occurred between Vision and NorthStar.   *Id.* at pp. 7-10.   Finally, Judge Hopkins determined that, under Rule 65(d), Harris was "bound by the injunction entered against Vision because in his capacity as CEO and sole managing member of Vision, his liability was the same as if he had been a named party in the underlying lawsuit."  *Id.* at pp. 10-22.   Judge Hopkins recommended that Judge Hurley enter an order granting the permanent injunction and permit Judge Hopkins to have a second evidentiary hearing to determine whether the injunction was violated and whether the nonparties should be held in contempt.   *Id.* at pp. 11-12.

On July 1, 2016, the non-parties filed their objections to the Report and Recommendation.   [DEs 151, 152].   On July 6, 2016, Judge Hurley entered an Order Adopting Magistrate Judge's Report and Recommendation & Holding Non-Parties NorthStar and Harris Bound by Permanent Injunction Previously Entered in this Action against Defendant NorthStar. [DE 153].   NorthStar filed an interlocutory appeal of Judge Hurley's Order to the Eleventh Circuit.   [DE 165].

While the appeal was pending, Judge Hopkins conducted a second evidentiary hearing and found that NorthStar and Harris had actually violated the terms of the injunction.   [DE 250].   He recommended that they be held in contempt.   *Id.*   On March 16, 2017, Judge Hurley entered an Order Rejecting in Part and Adopting in Part Report and Recommendation of

4

Magistrate Judge.   [DE 289].   Judge Hurley found that NorthStar was in civil contempt for violating the permanent injunction, but found that Harris should not be held individually liable. *Id.*   Judge Hurley denied ADT's motion for reconsideration as to Harris.   [DE 295].

The Eleventh Circuit heard oral argument and then issued a published opinion on April 14, 2017.   *See ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir. 2017). The Eleventh Circuit vacated the District Court's Order which stated that NorthStar was bound by the injunction.   *Id.*   The Eleventh Circuit agreed with the District Court that NorthStar and Vision were not in privity.   *Id.* at 1352-54.   The Eleventh Circuit also did not dispute that a de facto merger under state law occurred between NorthStar and Vision.   *Id.* at 1354-55. However, the Eleventh Circuit ruled that the District Court erred in failing to make a finding that NorthStar had knowledge of the injunction against Vision, as required by Rule 65(d).   *Id.*   The Eleventh Circuit explained that "[i]n the absence of a finding that NorthStar knew about the injunction against Vision Security, the district court erred when it ruled that NorthStar was bound by the injunction under a theory of de facto merger.   The record does not support a ruling that NorthStar is bound by the injunction."   *Id.* at 1355 (internal citation omitted).   Finally, the Eleventh Circuit vacated the order that NorthStar is bound by the injunction but gave no further instructions to the District Court.   *Id.*   The Mandate was issued on August 15, 2017.   [DE 340].

After the mandate was issued, Judge Hopkins issued a report and recommendation which awarded attorney's fees to NorthStar.   [DE 346].   ADT filed objections, and on March 6, 2018, the Honorable William P. Dimitrouleas[3], United States District Judge, entered an Omnibus Order [DE 355].   The Court explained that "it seems to the lower court that the Eleventh

---

[3] This case was reassigned to Judge Dimitrouleas after the retirement of Judge Hurley.

Circuit, in vacating Judge Hurley's Order…was putting this case in the same posture that it was in prior to the entry of that order, essentially saying to the district court to start over on this particular order and do it right this time." *Id.* at p. 8.   Judge Dimitrouleas further interpreted the appellate court's order as an instruction to the district court that "unless you make a factual finding that NorthStar had knowledge of the injunction, as required by Rule 65(d), you cannot legally enter an order holding that NorthStar is bound by the injunction under the de facto merger theory." *Id.*   He pointed out that the Eleventh Circuit did not reverse the order or indicate that the contempt proceedings were ending.   *Id.* at p.10.   Judge Dimitrouleas also emphasized that the Eleventh Circuit "vacated the appealed order based on the absence of a required factual finding by the district court regarding NorthStar's actual knowledge of the injunction, not based on a finding by the Eleventh Circuit that there was no such knowledge." *Id.*   Judge Dimitrouleas specifically referred the contempt proceeding to the undersigned[4] for "an evidentiary hearing and report and recommendation as to the issue of whether NorthStar had actual notice of the injunction as required by Fed. R. Civ. P. 65(d), prior to the actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt against NorthStar." *Id.* at p. 12.

On May 11, 2018, NorthStar filed a Motion for Summary Judgment [DE 366], which was denied.   *See* DE 367.   On June 15, 2018, ADT filed a Motion for Summary Judgment, which was also denied.   *See* DEs 392, 398.

## II.   **EVIDENTIARY HEARING**

The Court held an evidentiary hearing on August 28, 2018.   ADT introduced 15

---

[4] The matter was referred to the undersigned after the retirement of Judge Hopkins.

exhibits.[5]   Exhibit 1 is the Agreed Permanent Injunction dated September 11, 2013 [DE 415-1].

Exhibit 2 is a redacted email dated February 14, 2014, from Greg Watts to several members of

NorthStar's board of directors [DE 415-2].   Exhibit 3 is a redacted email dated March 6, 2014,

from Rob Harris and Dan Noble [DE 415-3].   Exhibit 4 is a redacted email dated July 2, 2014,

from Edward Niemcyzk to several members of NorthStar's board of directors with a Power Point

presentation attached [DE 415-4].   Exhibit 5 is an email dated December 17, 2014, from Ben

Nale to two members of NorthStar's board of directors that attached a summary of the pending

litigation involving Vision [DE 415-5].   Exhibit 6 is an Order Modifying Agreed Permanent

Injunction which is dated December 17, 2014, along with the (Revised) Agreed Permanent

Injunction [DE 415-6].   Exhibit 7 is a redacted memorandum dated December 30, 2014, from K

& L Gates LLP to NorthStar and Goldman, Sachs & Co. [DE 415-7].   Exhibit 8 is an email

chain dated January 6, 2015, initially started by Greg Watts to the CEO of NorthStar and

members of NorthStar's board of directors [DE 415-8].   Exhibit 9 is the Asset Purchase

Agreement between NorthStar and Vision Security dated January 16, 2015 [DE 415-9].

The Court notes that Exhibits 10, 11, 13, 15, and 16 were objected to by NorthStar, and

the Court admitted them over the objections.   However, the Court stated that it would later

determine what weight, if any, to give those exhibits upon review of the totality of the evidence

in this case.   Exhibit 10 is a portion of a presentation from NorthStar's February 4, 2015 board

of directors meeting [DE 415-10].   Exhibit 11 is an email chain dated January 26-28, 2015

between Sanders McNew, counsel for ADT, and Sean Brown, who was chief compliance officer

at NorthStar at that time [DE 415-11].   Exhibit 12 is NorthStar's Responses to ADT, LLC's

---

[5] ADT's proposed Exhibit 14 was not admitted, as NorthStar's counsel's objections were sustained as to that exhibit.

First Set of Requests for Admission [DE 415-12].   Exhibit 13 is the July 5, 2018 Declaration of Kenneth Wiesenfeld, who was formerly the chief financial officer of Security Networks and became a board member of NorthStar in 2014 [DE 415-13].   Exhibit 15 is a redacted email dated August 26, 2013, from Scott Atherton to Ken Wiesenfeld which attached a draft of the settlement agreement between ADT, Security Networks, and Vision [DE 415-14].   Exhibit 16 is a redacted email dated September 25, 2013, from Scott Atherton to Steve Cannon, Fred Benjamin, Ken Wiesenfeld, and Joseph Shields which attached the settlement documents, including the proposed agreed permanent injunction, between ADT, Security Networks, and Vision [DE 415-15].

ADT also introduced as Demonstrative Exhibit #1 a slide presentation it used during the August 28, 2018 hearing [DE 415-16].   ADT agreed to remove the portion of the presentation that was objected to by NorthStar and filed an Agreed Motion to Substitute [DE 428], which was granted [DE 429].

NorthStar introduced no exhibits.[6]   Neither party introduced any live witnesses. Instead, the parties submitted deposition and hearing designations, cross-designations, and objections.   The Court ruled on all of the objections at the August 28, 2018 hearing.   Both parties made opening statements, but they opted to submit their closing statements in written form.

At the hearing, the parties agreed that ADT has the burden of proof at this juncture and that the burden ADT must meet is the clear and convincing evidence standard.

---

[6] NorthStar planned on introducing the APA as its only exhibit, but the Court determined that this was unnecessary since the exhibit had already been entered into evidence by ADT.

### III.   POST-HEARING BRIEFS

#### A.   ADT's Post Hearing Brief

ADT filed its Closing Statement on the Matter of NorthStar's Knowledge [DE 421] on September 22, 2018.   ADT summarizes the facts that it believes establish NorthStar's actual knowledge.   *Id.* at pp. 2-10.   ADT next asserts that "it is conceded that NorthStar, and its directors through whom it acts, had actual knowledge of the permanent injunction that barred Vison from using false claims of ADT affiliation to sell alarm systems to ADT customers."   *Id.* at p. 11.   ADT further asserts that the Court is required to find that "NorthStar had knowledge of the Vision injunction sufficient to bind NorthStar to the injunction under the established Supreme Court cases such as *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973), as well as the Eleventh Circuit's decision in this matter."   *Id.*

ADT next argues that "actual notice" for the purposes of Rule 65(d) only requires knowledge, and does not require formal notice.   [DE 421, p. 11].   ADT contends that "NorthStar's knowledge of the Vision injunction is established not only by circumstance but through NorthStar's own admissions.   The Eleventh Circuit's ruling in this case requires nothing more."   *Id.*   ADT asserts that the evidentiary record shows that NorthStar's directors were "fully informed of the Vision injunction in the eleven months of due diligence investigations they conduced into Vision's legal and business affairs."   *Id.* at 13.   According to ADT, the knowledge of NorthStar's directors and board members, including Mr. Wiesenfeld, is imputable to NorthStar under the law.   *Id.* at pp. 14-16.

ADT dismisses NorthStar's "two injunctions" theory and explains that the two injunctions at issue are actually the same injunction as the modification to the original permanent

injunction was the addition of one simple sentence that is irrelevant to this contempt proceeding. [DE 421, pp. 16-17].   Finally, ADT explains that, while it has focused its argument on whether NorthStar had actual notice of the injunction prior to NorthStar's January 16, 2015 purchase of Vision, the Court should also find actual notice under a successor liability theory.   *Id.* at pp. 17-18.   ADT argues that "the record is clear beyond doubt that NorthStar received actual notice of the injunction by ADT's email to NorthStar's general counsel on January 28, [sic] [DE 415-11 (ADT Exh. 11)] and that NorthStar understood the notice as proven by the NorthStar board presentation prepared the following week.   [DE 415-10 (ADT Exh. 10) at 3.]."   *Id.* at p. 18. ADT maintains that this evidence legally bound NorthStar to the Vision injunction on January 28, 2015.   *Id.* at pp. 18-19.

### B.   NorthStar's Response Post Hearing Brief

NorthStar filed its Closing Brief on Actual Notice [DE 424] on October 10, 2018. NorthStar concedes that it "confirmed long ago that it was generally aware of the first injunction against Vision."   *Id.* at p. 1.   However, NorthStar argues that ADT has provided no evidence that NorthStar even knew a second injunction existed.   *Id.*   NorthStar maintains that "general knowledge is not actual knowledge."   *Id.*   NorthStar summarizes the evidence and specifically disputes several of the facts as described in ADT's brief.   *Id.* at pp. 3-10.

NorthStar contends that "[t]here is no evidence that NorthStar contemplated that it would be subject to any injunction against Vision.   NorthStar purchased only specific assets from Vision, and understood that Vision would continue to operate as a separate entity."   [DE 424, p. 11].   NorthStar emphasizes that it was not even aware of the second injunction.   *Id.* NorthStar contends that "[i]n addition to the fact that NorthStar did not know that it was subject

to the Second Injunction, NorthStar did not have actual notice of the Second Injunction because there is no evidence that NorthStar was aware of its terms." *Id.* at p. 12.   According to NorthStar, "general knowledge of the further litigation between Vision and ADT after entry of the First Injunction is not actual notice of the Second Injunction." *Id.*   NorthStar admits that it was aware of the first injunction, but denies being aware of the first injunction's specific terms. *Id.* at p. 13.   NorthStar argues that, while Mr. Wiesenfeld was aware of the first injunction, the evidence shows that he did not negotiate or approve its terms and never discussed it with anyone at NorthStar; therefore, ADT's argument that Mr. Wiesenfeld's knowledge of the injunction should be imputed to NorthStar fails.   *Id.* at p. 14.

NorthStar next contends that ADT cannot prove actual notice of the second injunction by showing NorthStar's general awareness of the existence of the first injunction.   [DE 424, p. 14]. NorthStar points out that there is "no evidence that anyone knew the [first and second] injunctions were similar." *Id.* at p. 15.   NorthStar points out that ADT is only trying to bind it to the second injunction, which replaced the first injunction, so NorthStar's "general awareness of the First Injunction is not actual notice of the Second Injunction under Rule 65." *Id.* at p. 16.

NorthStar argues, in its post-hearing brief, that ADT "appears to have conceded that the date of the APA is the operative date." [DE 424, p. 16].   NorthStar further asserts that "[a]s a matter of due process, NorthStar cannot be bound by an injunction of which it was not aware at the time it decided to purchase the assets that allegedly made NorthStar bound by the injunction." *Id.*   NorthStar explains that it "does not believe that the [Eleventh Circuit] intended to remand the case to address knowledge, but any remand must be limited to determining whether NorthStar had actual notice prior to the APA." *Id.* at p. 18.

### C. ADT's Reply Post Hearing Brief

ADT filed its Reply Brief on the Matter of NorthStar's Knowledge [DE 427] on October 19, 2018.   ADT disputes NorthStar's contentions that (1) there are two injunctions, (2) "[t]his was a modest transaction for the purchase of certain assets, such that nobody at NorthStar paid much attention to Vision's litigation with ADT," and (3) that NorthStar "did not have sufficient knowledge of the injunction to bind it to the Vision injunction."   [DE 427, p. 1].   ADT argues that the small change—the addition of a clarifying sentence—to the original permanent injunction did not create a second injunction.   *Id.* at pp. 1-3.   ADT also maintains that it "never accused NorthStar of violating the added sentence.   The only relevant provisions of the injunction were already completely stated by this Court in 2013, and stated *verbatim* by the 2014 revision."   *Id.* at p. 4.   ADT again emphasizes that NorthStar has conceded that it knew about the 2013 injunction and that the evidence supports this.   *Id.*

ADT next argues that NorthStar entered into a merger agreement with Vision by way of the APA.   [DE 427, p. 5].   ADT points out that the assets purchased by NorthStar consisted of the entire Vision alarm sales business.   *Id.*   According to ADT, the "APA thus itself flatly contradicts NorthStar's self-serving claim here that it did not concern itself with Vision's legal constraints such as the ADT injunction because it was merely buying some 'customer accounts' that obviated any need to consider any of Vision's legal obligations."   *Id.* at p. 6.   Next, ADT asserts that the record in this case "clearly proves that the entire NorthStar board of directors was supplied information regarding the existence and the terms of the Vision injunction...."   *Id.* ADT further asserts that NorthStar's board of directors', outside counsel's, and collective owners' actual knowledge of the injunction should be imputed to NorthStar.   *Id.* at pp. 6-7.

ADT maintains that the evidence shows that NorthStar was put on notice of the injunction's precise requirements and that it might apply to NorthStar. [DE 427, pp. 7-8]. ADT also argues that the injunction's terms clearly establish that NorthStar was bound by it as the injunction binds Vision's successors and assigns and any transferee of the businesses or assets of Vision. *Id.* at p. 8. ADT contends that the relevant case law finds actual notice for the purposes of Rule 65(d) "once the alleged contemnor has been made aware of the injunction." *Id.* at p. 9. ADT argues that the evidence clearly shows that NorthStar had actual notice of the injunction before it purchased Vision and that ADT, through its counsel, notified NorthStar just days after the transaction that it believed NorthStar was bound by the injunction. *Id.* at p. 10. Finally, ADT states that "[w]hile it is true that the Eleventh Circuit analyzed the question largely as a question of whether NorthStar had actual notice of the Vision injunction prior to the purchase, it neither reached nor resolved the question of the effect of post-sale notice….." *Id.* at p. 11.

## IV. DISCUSSION AND ANALYSIS

The undersigned is fully aware of the lengthy and contentious nature of the litigation in this case. The issues are complicated by the fact that United States Magistrate Judge James M. Hopkins, who is now retired, held lengthy evidentiary hearings on the issue of contempt of the permanent injunction and then issued lengthy reports and recommendations. *See* DEs 146, 250; *ADT LLC v. Sec. Networks, LLC*, No. 12-81120-CIV, 2017 WL 2106200, at *1 (S.D. Fla. Feb. 9, 2017), *report and recommendation adopted in part, rejected in part,* No. 12-81120-CIV, 2017 WL 2113410 (S.D. Fla. Mar. 16, 2017), *reconsideration denied,* No. 12-81120-CIV, 2017 WL

13

2169237 (S.D. Fla. Mar. 20, 2017).[7]   Moreover, United States District Judge Daniel T. K. Hurley,

who is also now retired, entered the Agreed Permanent Injunction [DE 105] and Order Modifying

Agreed Permanent Injunction [DE 107] at issue and also issued the orders on Judge Hopkins'

reports and recommendations.   [DEs 153, 289].

The Eleventh Circuit issued an opinion regarding Judge Hopkins' and Judge Hurley's

rulings on April 14, 2017, *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir.

2017).   Subsequently, the case was reassigned to United States District Judge William P.

Dimitrouleas and the undersigned, two judges who had no involvement with the underlying

procedural history, orders or hearings, except for Judge Dimitrouleas' entry of the Omnibus Order

[DE 355], which decided certain issues after remand from the Eleventh Circuit and referred the

instant matter to the undersigned.

A.   The Sole Issue to Be Decided by the Undersigned in This Report and
Recommendation

ADT and NorthStar assert numerous arguments on a plethora of issues, but the sole issue

that has been referred for the undersigned's determination is "whether NorthStar had actual notice

of the injunction as required by Fed. R. Civ. P. 65(d), prior to the actions constituting violations of

the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt

against NorthStar."[8]   [DE 355, p. 12].   This referral is based upon the Eleventh Circuit's holding

that "in the absence of a finding that NorthStar knew about the injunction against Vision Security,

---

[7] Judge Hopkins also entered a Report and Recommendation Regarding NorthStar's Motion for Attorneys' Fees and
Costs (DE 310, 323); Plaintiff's Motion to Strike NorthStar's Motions (DE 321); Harris' Motion for Attorneys' Fees
and Costs (DE 314); and NorthStar's Motion for Appellate Attorneys' Fees (DE 334/335) on January 11, 2018, just
prior to his retirement.   *See* DE 346.   Judge Dimitrouleas ruled on the Report and Recommendation on March 5,
2018.   *See* DE 355.
[8] The actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of
civil contempt against NorthStar occurred between January 2015 and October 2015.   *See* DE 108-33; DE 417, p.
33.   No further specificity has been provided by the parties.

the district court erred when it ruled that NorthStar was bound by the injunction under a theory of de facto merger." *ADT LLC*, 853 F.3d at 1355.   Therefore, the undersigned shall only determine this limited issue regarding whether NorthStar was actually noticed and had knowledge of the injunction under Rule 65(d).[9]

## B.  Rule 65(d)(2)

Federal Rule of Civil Procedure 65 governs who may be bound by a federal injunction and states the following:

> (2) *Persons Bound.* The order binds only the following *who receive actual notice* of it by personal service *or otherwise*:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2) (second and third emphases added); *see also ADT LLC*, 853 F.3d at 1351– 52.   In this case, ADT clearly did not effect personal service of the permanent injunction entered in this case upon NorthStar.   The undersigned is therefore tasked with determining whether NorthStar received actual notice of the permanent injunction in some other manner ("or otherwise").[10]

## C.  The Clear and Convincing Standard

The Eleventh circuit has held that a court may make a "finding of civil contempt--that is,

---

[9]  The District Court previously determined, and the Eleventh Circuit agreed, that NorthStar and Vision are not in privity.   Thus, the undersigned need not address the privity issue for two reasons.   First, the Eleventh Circuit has found a lack of privity, and, second, the privity issue has not been referred to the undersigned by Judge Dimitrouleas.   Further, the undersigned has not been referred and will not address the issue of whether a de facto merger occurred between Vision and NorthStar or the issue of whether NorthStar can be bound to the injunction as a successor in interest to Vision.

[10]  It seems clear that personal service of an injunction upon an alleged contemnor is not necessary under Rule 65(d)(2); rather, what is required is either personal service **or** another form of notice which falls under the category of the "or otherwise" language contained in the rule.   A plain reading of Rule 65(d)(2) establishes that notice can be provided in more than one way, that is, by personal service or by other means.

willful disregard of the authority of this Court--only upon a showing that the alleged contempt is *clear and convincing.*" *Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (citing *McGregor v. Chierico,* 206 F.3d 1378, 1383 (11th Cir.2000); *NLRB v. Crockett-Bradley, Inc.,* 598 F.2d 971, 975 (5th Cir.1979)). "This burden of proof is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt." *Id.* (citing *Jordan v. Wilson,* 851 F.2d 1290, 1292 (11th Cir.1988) (per curiam)). At the evidentiary hearing, the parties agreed that the clear and convincing standard governs this proceeding.

### D. The Necessary Elements to Establish Contempt

There are three elements that must be established by clear and convincing evidence in order to justify a finding of contempt. Specifically, the case law establishes the following: "[t]he clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous;* and (3) the alleged violator had the ability to comply with the order." *Georgia Power Co.*, 484 F.3d at 1291 (citing *McGregor,* 206 F.3d at 1383). "[T]hose who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991).

### E. Whether NorthStar Had Actual Notice of the Injunction at the Relevant Time

The Court has carefully considered all of the evidence and argument submitted by the parties on the issue of NorthStar's actual notice of the permanent injunction. As to the exhibits admitted at the evidentiary hearing, the Court has accorded those exhibits the weight, if any, it has deemed appropriate. The Court has also carefully considered and evaluated the testimony

16

admitted at the evidentiary hearing by deposition and hearing designations and counter-designations. The undersigned finds that ADT has proven by clear and convincing evidence that NorthStar did have actual notice—and knowledge—of the permanent injunction (the 2013 injunction and its 2014 minor revision) at the relevant time period[11] as required by Rule 65(d)(2). In support of this finding, the Court relies upon the following facts.

### (1) NorthStar has conceded its knowledge of the injunction

In its closing argument memorandum, NorthStar concedes general awareness of the "first injunction," which was entered on September 11, 2013. [DE 424, p. 1]. NorthStar further admits that it was aware of what it terms the "first injunction," but denies being aware of its specific terms. [DE 424, p. 13]. In NorthStar's Responses to ADT's First Set of Requests for Admission, NorthStar admitted it was aware of the lawsuits prior to January 16, 2015, admitted that certain officers or directors of NorthStar were aware that ADT and Vision had agreed to a settlement prior to January 16, 2015, and admitted that certain officers or directors of NorthStar were aware that ADT and Vision had agreed to an injunction prior to January 16, 2015.[12] [ADT Ex. 12, DE 415-12, p. 1, Requests #1-3].

However, NorthStar seeks to avoid liability by surgically parsing the 2013 injunction from its 2014 minor amendment and turning them into two distinct injunctions, the second of which NorthStar now claims a complete lack of knowledge. On the other hand, ADT argues that there was but one 2013 injunction, which was slightly amended in 2014, and that NorthStar had knowledge and actual notice of both. The undersigned must therefore determine whether there was one injunction, which was modified by the parties, or two separate injunctions.

---

[11] The relevant time period is further discussed in this Report and Recommendation at Section (8), *infra*.
[12] This is the date the parties entered into the APA.

**(2) There was one injunction**

In this regard, on September 11, 2013, Judge Hurley entered the Agreed Permanent Injunction [DE 105] in this case.  On December 17, 2014 Judge Hurley entered an Order Modifying Agreed Permanent Injunction [DE 107] in this case.  Judge Hurley explained that the Court had previously entered an Order Granting Agreed Motion for Entry of Modified Judgment in a related case, *ADT LLC v. Vision Security, LLC*, No. 13-cv-81197-DTKH, and that the "(Revised) Agreed Permanent Injunction" was effective in this case (12-cv-81120-WPD) as well. *See* DE 107.  The only change to the Agreed Permanent Injunction was the de minimus addition of the following language: "Vision shall not train anyone, including any of its managers, employees, agents, representatives, or independent contractors, or any person who may sell for or solicit customer [sic] on behalf Vision, to violate the terms of this Permanent Injunction." *Id.* at p. 2.

The Court finds that there were not two injunctions.  There was one permanent injunction entered on September 11, 2013, and that injunction was slightly revised on December 17, 2014, per the agreement of the parties to the litigation.  This finding is consistent with the Eleventh Circuit opinion where, throughout the opinion, it only referenced "the injunction."  853 F.3d at 1348.  This finding is also consistent with Judge Dimitrouleas' Omnibus Order which described the December 17, 2014 Order Modifying Agreed Permanent injunction as "amending the injunction with minor revisions." [DE 355, p. 2].   NorthStar's effort to escape liability under the injunction by attempting to parse one injunction into two separate injunctions is rejected.

18

### (3)  Mr. Wiesenfeld had actual notice of the terms of the 2013 injunction

The undersigned finds NorthStar's argument that it was not aware of the actual terms of the 2013 injunction to be without merit.   There is clear evidence in the record that Ken Wiesenfeld[13] was emailed a draft of the 2013 injunction on September 25, 2013.   [ADT Ex. 16, DE 415-15]. While this version was not actually dated or signed by the District Judge, the draft was identical to injunction entered in 2013.   Mr. Wiesenfeld was involved as CFO for Security Networks in the underlying litigation which gave rise to the injunction.[14]   He also received the K & L Gates memorandum discussed in the next section.

### (4)  The K & L Gates memorandum dated December 30, 2014, provided actual notice of the injunction to NorthStar

A key piece of evidence in this case establishing actual notice of the 2013 permanent injunction and its 2014 amendment is the K & L Gates memorandum dated December 30, 2014 [ADT Ex. 7, DE 415-7], which was drafted during the due diligence period prior to the Asset Purchase Agreement.   The memo, from a law firm retained by either NorthStar or Goldman Sachs[15] [DE 416-2, p. 62, lines 4-14] and which represented NorthStar and Goldman Sachs [DE 424, p. 7], clearly advised the NorthStar board of directors as to the existence of the 2013 permanent injunction in this case.   It also advised the board that, with regard to the related case (13-cv-81197), "ADT filed a motion for a permanent injunction on November 20, 2014, in which it stated that the parties have agreed to settle the action with a modification to the prior injunction prohibiting Vision Security from engaging in certain training and other practices."   [ADT Ex. 7, DE 415-7, p. 7].   This clearly constitutes notice to NorthStar.

---

[13]  Mr. Wiesenfeld became a director of NorthStar in November 2014.   [ADT Ex. 13, DE 415-13].
[14]  See Section (5) of this Report and Recommendation, *infra*.
[15]  According to NorthStar's Responses to ADT's First Set of Requests for Admission, NorthStar admitted that Goldman Sachs was an ultimate owner of NorthStar.   [ADT ex. 12, DE 415-12, p. 12, Request #11].

Moreover, after the K & L Gates memorandum was sent to the members of NorthStar's board of directors, Greg Watts, a banker with Goldman Sachs who became a member of the board of directors at NorthStar, sent an email stating, "[a]fter reading, let's discuss how these issues are mitigated by the team operating under NorthStar's policies and procedures. Jason—as I mentioned, we will also need to have you join a call with our internal compliance person to the discuss the same." [DE 415-8]. Greg Watts also sent an email stating, "[t]hough Sean Brown will have not received the memo, we'd like him on the call as well since he will be the Chief Compliance Officer at NorthStar in charge of enforcing these provisions." *Id.* It cannot be plausibly argued by NorthStar that, even though its own counsel advised NorthStar's board of directors of the 2013 permanent injunction and the 2014 amendment to it, and even though Greg Watts' emails discuss having NorthStar's chief compliance officer on a call since he would be "in charge of enforcing these provisions," NorthStar nonetheless did not have actual notice and knowledge of the injunction. NorthStar's efforts to parse its knowledge as supposedly having "general knowledge" as opposed to "actual knowledge" is unavailing and legally and factually unsupportable. When K & L Gates advised NorthStar's board of directors of the 2013 injunction and its 2014 amendment, NorthStar at that point had knowledge of the injunction and received actual notice. The emails among NorthStar's board of directors clearly confirm this receipt of actual notice and NorthStar's knowledge.

### (5) The knowledge of Mr. Wiesenfeld and NorthStar's board of directors is properly imputed to NorthStar

NorthStar seems to take the incongruous position that, even though its board of directors was advised of the injunction, and even though its board member Mr. Wiesenfeld was involved in the lawsuit leading up to the injunction and knew of it, their knowledge cannot be imputed to

20

NorthStar.   The Court rejects this implausible argument.   "[C]ourts have uniformly held that the acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation."   *Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1227 (S.D. Fla. 2007) (citing *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326, 1340 (S.D. Fla. 1999)).   "The knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to the corporation."   *Id.*   In this case, there is clear evidence that Mr. Wiesenfeld had actual notice of the 2013 permanent injunction and of its specific terms [ADT Ex. 16, DE 415-15]. Mr. Wiesenfeld was formerly the chief financial officer of Security Networks, one of the original defendants in the underlying litigation when it was ultimately settled and the injunction entered, and he became a board member of NorthStar in 2014 [DE 415-13].   Mr. Wiesenfeld's knowledge of the underlying lawsuit and injunction must be imputed to NorthStar based on the relevant case law.[16]

Moreover, there is clear and convincing evidence that Mr. Wiesenfeld and other members of NorthStar's board were provided with the K & L Gates memo.   *See* DE 415-8.   Their knowledge of the memo, and therefore of ADT and Vision's agreement to modify the 2013 permanent injunction, must be imputed to NorthStar.[17]

---

[16] NorthStar cites the following law in its trial brief [DE 424, p. 14]: "[A] principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, unless the agent actually communicates his information to the principal."   *Indep. Oil & Gas Co. v. Shelton*, 79 Utah 384 (1932).   However, that case cites law that is not precedent in this District and was decided over 80 years ago.

[17] Further, K & L Gates, as NorthStar's counsel, are agents of NorthStar, and, thus, counsel's knowledge—which they relayed to NorthStar's board of directors—may possibly be imputed to NorthStar.   *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1309 (S.D. Fla. 2000) ("Knowledge and notice to an attorney may be imputed to a corporation, depending on the relationship between the parties, and the ultimate determination of whether it will be imputed depends on a factual determination.").

**(6) NorthStar's argument that it was "generally aware" of the "first injunction," but not of its specific terms and that it was wholly unaware of the "second injunction" is rejected as an attempt to deliberately feign ignorance of the injunction**

As noted previously, NorthStar admits that it was aware of what it terms the "first injunction," but was not aware of its specific terms.   [DE 424, p. 13].   NorthStar further asserts that it was not at all aware of what it terms the "second injunction."   *Id.* at p. 11.   NorthStar makes these implausible arguments despite the fact that its own board of directors was advised in writing of the 2013 injunction and its 2014 amendment by its own attorneys, K & L Gates, and despite the fact that NorthStar's board member Mr. Wiesenfeld was involved in the underlying litigation which led to the entry of the 2013 injunction.

NorthStar would have this Court believe that it was so unconcerned with its acquisition of Vision that it did not bother itself with inquiring into the injunction entered against the company it was acquiring under the APA.   However, NorthStar's purchase of Vision included substantially the entire Vision alarm business and was a significant acquisition as established by the eleven weeks of due diligence NorthStar spent on the acquisition and the close involvement of the K & L Gates law firm in that process.   It defies logic and common sense that NorthStar would engage in eleven months of due diligence into Vison's business and legal affairs before entry into the APA and yet ignore K & L Gates' notice of the 2013 injunction and its 2014 amendment and inexplicably not look into the terms of the injunction.

It appears to the undersigned that NorthStar is too finely attempting to parse and minimize its knowledge of the injunction in an effort to avoid liability.   NorthStar cannot plead ignorance of the injunction when its own board of directors, its own attorneys, and its own board member Mr. Wiesenfeld were made aware of the 2013 injunction and its 2014 minor amendment.   *See*

*Clairson Int'l Corp. v. Master Tool Co.*, No. 84-2861-CIV, 1986 WL 84374, at *2 (S.D. Fla. Feb. 4, 1986) ("Defendant cannot now come before this Court and plead ignorance when his counsel knew all along, and Defendant itself was fully aware that previously this consent decree had been agreed to by the parties and was being submitted to the Court for its approval.").

In *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311 (10th Cir. 1998), the court noted that it is well-settled law that the effect of written notice cannot be avoided by refusing service of that notice. *Id.* at 1318. Likewise, the undersigned submits that NorthStar cannot avoid actual notice and knowledge of the injunction by acting in a deliberately ignorant manner or by consciously avoiding the injunction terms. As explained in *Ne. Women's Ctr., Inc. v. McMonagle*, No. CIV. A. 85-4845, 1992 WL 13031, at *5 (E.D. Pa. Jan. 22, 1992), conscious avoidance or deliberate ignorance of learning the contents of an injunction will not enable parties to escape responsibility for the injunction's terms; *see also Georgine v. Amchem Prod., Inc.*, No. CIV.A. 93-0215, 1995 WL 422792, at *12, f.n. 10 (E.D. Pa. July 12, 1995) (same).

NorthStar's apparent "head in the sand" position that it knew of the injunction but not of its terms is analogous to the concept of deliberate ignorance, which is well-ensconced in federal criminal law.[18] Under the facts of this case, NorthStar should not be able to escape a finding of knowledge on its part by asserting it generally knew of the injunction, but did not delve into the specifics of the injunction.

---

[18] "If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed — unless the Defendant actually believed the fact didn't exist. 'Deliberate avoidance of positive knowledge' — which is the equivalent of knowledge — occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents." Pattern Crim. Jury Instr. 11th Cir. SI S8 (2016), Pattern Crim. Jury Instr. 11th Cir. SI S8 (2016).

**(7)  The specific facts of this case should result in a finding that NorthStar had actual notice and knowledge of the injunction as required by Rule 65**

Moreover, this case involves a unique factual scenario in which the 2014 amended permanent injunction only slightly revised the 2013 injunction, and the slight revision has no nexus whatsoever to NorthStar's allegedly contemptuous conduct.   Given the precise similarity of the 2013 injunction and its 2014 amendment, the fact that Mr. Wiesenfeld had actual knowledge of the 2013 injunction and its terms, the fact that NorthStar's board members had actual knowledge of the 2013 injunction and that an amended injunction was going to be imminently entered together with actual knowledge of what the amendment was about, the fact that NorthStar's own attorneys possessed and transmitted to NorthStar actual knowledge of the injunction, and the fact that NorthStar's board members' knowledge must be imputed to NorthStar, and having carefully considered all of the other record evidence in this case, the Court finds that ADT has met the clear and convincing evidence standard to establish that NorthStar had actual notice and knowledge of the permanent injunction at issue—both the 2013 injunction and the 2014 minor revision.

**(8)  The relevant date of NorthStar's actual notice of the injunction**

The undersigned notes that, while NorthStar argues that the inquiry here is limited to the issue of whether NorthStar had actual notice of the permanent injunction prior to the execution of the APA, Judge Dimitrouleas' referral to the undersigned is not explicitly limited to that time period.   So to be crystal clear, the undersigned first finds by clear and convincing evidence that NorthStar had actual notice and knowledge of the 2013 permanent injunction and its 2014 minor amendment prior to the execution of the APA on January 16, 2015, which is the time period referenced by the Eleventh Circuit.   *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1353 (11th Cir. 2017).

Secondly, the Court further finds by clear and convincing evidence that NorthStar had actual notice and knowledge of the 2013 permanent injunction and its minor 2014 amendment prior to the "actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt against NorthStar."   [DE 355, p. 12].   In this regard, the undersigned has carefully considered the email correspondence between ADT's counsel, C. Sanders McNew, and Sean Brown, who was chief compliance officer at NorthStar at that time, dated January 26, 2015 through January 28, 2015.   [DE 415-11].   After a string of emails, on January 28, 2015, Mr. McNew wrote to Sean Brown, "Sean, is your response a denial that NorthStar is bound by the Vision injunction?"   *Id.* at p. 1.   Then, at the February 4, 2015 NorthStar board of directors meeting, one of the topics to be discussed was the following: "[r]umors are ADT is trying to build a case against NorthStar.   Communication with Sean Brown was threatening and implies that they expect NorthStar is to comply with terms of their settlement with Vision."   [DE 415-10].   The undersigned finds that this constitutes clear and convincing evidence that NorthStar had further actual notice of the injunction as of January 28, 2015.   The same reasoning concerning imputing the knowledge of a corporate officer and deliberate ignorance or conscious avoidance considered above applies here as well.   The record reflects that only two of the "actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt against NorthStar" took place before Mr. McNew sent his email on January 28, 2015.   The remainder of the violations took place after Mr. McNew sent his email on January 28, 2015.

## V. CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Judge make a finding that NorthStar had actual notice of the injunction (the 2013 injunction and its 2014 minor revision) as required by Fed. R. Civ. P. 65(d), prior to the actions constituting violations of the permanent injunction forming the basis of Judge Hurley's adjudication of civil contempt against NorthStar. This Court also **RECOMMENDS** that the District Judge make a finding that NorthStar had knowledge of the injunction (the 2013 injunction and its 2014 revised injunction) against Vision Security at the time the APA was executed as required by Rule 65(d). *See ADT LLC*, 853 F.3d 1348 at 1355.

## NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge William P. Dimitrouleas within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this _16th_ day of November, 2018.

WILLIAM MATTHEWMAN
United States Magistrate Judge