# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 12-81120-Civ-Hurley/Hopkins

ADT LLC,

     Plaintiff,

v.

SECURITY NETWORKS, LLC, and
VISION SECURITY, LLC

     Defendants.

_____ /

## NON-PARTY NORTHSTAR ALARM SERVICES, LLC'S
## MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62, non-party NorthStar Alarm Services LLC moves for a stay of the contempt proceedings pending NorthStar's appeal of the Court's January 30, 2019 *Order Approving Report of Magistrate Judge* [DE 439] ("Actual Notice Order"). NorthStar attaches a copy of its Initial Brief, filed today with the Eleventh Circuit.

## BACKGROUND

Since December 2015, NorthStar has been litigating whether it is properly before this Court.

In June 2016, Magistrate Judge Hopkins ruled that NorthStar was not in privity with Vision and that NorthStar's interests were not "so intertwined with Vision's that NorthStar should be bound by the injunction." DE 146 at 6. Nevertheless, Magistrate Judge Hopkins recommended that NorthStar be bound by the Second Injunction for having *de facto* merged with Vision. *Id.* at 7-10. Judge Hurley adopted the June 2016 report. DE 153 (the "Injunction Order").

On April 14, 2017, the Eleventh Circuit vacated the Injunction Order and affirmed this Court's ruling that "NorthStar and Vision are not in privity."  *See ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 148, 1352 (11th Cir. 2017).  The Eleventh Circuit ruled that NorthStar could not be bound based on a de facto merger theory, explaining that de facto merger is a state law concept and the "question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law."  *Id.* at 1354.

In rejecting the Court's application of de facto merger, the Eleventh Circuit identified two aspects of Federal Rule 65 not present in a de facto merger analysis: (1) "Rule 65 requires that a party have notice of an injunction before that party may be bound by the injunction;" and (2) that "[a]n order may not be 'so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'"  *Id.* at 1354-55 (*quoting Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9, 13 (1945)).  The Eleventh Circuit then explained why neither requirement had been satisfied:

> The district court made no finding that NorthStar had knowledge of the injunction against Vision Security, as required by Rule 65(d).  The district court found that the interests of NorthStar were not represented when the injunction was negotiated, and it found that the sales practices at issue in this appeal developed "prior to, and independent of, NorthStar's relationship with Vision [Security]."

*Id.* at 1355.

Following the Eleventh Circuit's opinion, this Court ordered additional proceedings to determine whether NorthStar had actual notice of the Second Injunction. DE 355.  After those proceedings, the Court entered the Actual Notice Order, adopting the Magistrate Judge's conclusion that NorthStar had actual notice of the Second Injunction and holding "that NorthStar is bound by the injunction under the de facto merger theory."  DE 439 at 2-3 (citing *ADT*).

NorthStar has appealed the Actual Notice Order [DE 441], and requests that the Court

stay further proceedings during that appeal.

## STANDARD ON MOTION FOR STAY

The factors to consider in deciding whether to issue a stay are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Kowalski v. Jackson Nat'l Life Ins. Co.*, 12-60597-CIV, 2014 WL 11531364, at *1 (S.D. Fla. 2014).  Courts have recognized that it may be difficult for a litigant to convince a judge of the likelihood of success on appeal when the judge entered the very order being appealed:

If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require as it does a prior presentation to the district judge whose order is being appealed. That judge has already decided the merits of the legal issue. The stay procedure of Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a) affords interim relief where relative harm and the uncertainty of final disposition justify it.

*Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Jun. 26, 1981)[1] (cited with approval in *Garcia-Mir*, 781 F.2d at 1453).

## ARGUMENT

I.   **NorthStar is likely to again succeed on the merits of its appeal.**

A.   **The Court failed to follow the law of the case that NorthStar and Vision are not in privity.**

The Eleventh Circuit's ruling that NorthStar and Vision were not in privity is law of the

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981 as binding precedent of the Eleventh Circuit.

case and is dispositive of whether NorthStar can be bound by the injunction. In vacating the Injunction Order, the Eleventh Circuit stated that "[a]n order may not be 'so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'" *ADT*, 853 F.3d at 1354-55 (*quoting Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9, 13 (1945)). The Eleventh Circuit noted this Court's findings that "that the interests of NorthStar were not represented when the injunction was negotiated," and that NorthStar developed the sales practices at issue "prior to, and independent of, NorthStar's relationship with Vision [Security].'" *Id*. at 1354. These findings are also law of the case. *See Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289, 1291 (11th Cir. 2005). Because NorthStar and Vision were not in privity – a ruling that is not changed by a finding of actual notice – NorthStar cannot be bound by the Second Injunction (or the First).

**B.      NorthStar cannot be bound under a state law de facto merger theory.**

De facto merger is not an allowed basis for binding a non-party to a federal injunction. De facto merger is a state law concept and the "question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law." *ADT*, 853 F.3d at 1354. ADT has never cited a case in which de facto merger was used to bind a non-party to an injunction.

**C.      There was no actual notice because there was no evidence that NorthStar was aware of the Second Injunction or that NorthStar was bound by it.**

**(1)      *Project B.A.S.I.C.***

A court can "make a finding of civil contempt – that is, willful disregard of the authority of [the] Court – only upon a showing that the alleged contempt is clear and convincing" and the moving party must establish, *inter alia*, that the order violated was "*clear and unambiguous*."

*Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis in original).   "A corollary of the requirement that orders enforceable through the contempt power be clear and unambiguous is that ***those who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them***."   *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991) (emphasis added).   The First Circuit explained:

> For a party to be held in contempt, it must have violated a clear and unambiguous order that ***left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion***.

*Id.* (emphasis added).

In adopting the Report, the Court did not distinguish between knowledge of the injunction and "reasonably definite advance notice that [the injunction] applie[d]" to NorthStar. The Magistrate Judge found that NorthStar was "deliberate[ly] ignorant" by choosing not to "delve into the specifics of the injunction."   Report at 22-23.   That conclusion is contrary to the fact that NorthStar did not know or consider that it could be bound.   NorthStar directors Greg Watts and Jason Christensen explained that because NorthStar was only purchasing assets from Vision, NorthStar's review of Vision's litigation was just to ensure that any Vision employees who engaged in bad practices would not do the same at NorthStar if NorthStar hired them.   DE 416-2 at 30:7-22; DE 416-3 at 37:6-20; 61:7-21.

ADT has never cited a case in which a federal court held a non-party subject to an injunction because the non-party purchased specific assets from the enjoined party, absent a close relationship between those entities prior to the transaction.   There is no evidence that NorthStar engaged in "deliberate ignorance."   If NorthStar had no idea the injunction might apply to it, NorthStar had no reason to engage in more due diligence than it did.

**(2)      There was no evidence that NorthStar saw the Second Injunction.**

ADT did not offer evidence that NorthStar even knew the Second Injunction existed, and the Court did not cite any.  Instead, the Court concluded that NorthStar had actual notice of the December 2014 Second Injunction because it only "slightly revised" the First Injunction.  Report at 18.  That is, the Court ruled that an alleged contemnor's awareness of a first order is actual notice of a second order if the orders are similar enough.  NorthStar is not aware of a case that supports such a holding.  Indeed, only NorthStar cited a case on point: *Reliance Insurance Company v. Mast Construction Company*, 159 F.3d 1311 (10th Cir. 1998).  In *Reliance*, the Tenth Circuit affirmed a trial court ruling that a non-party was not aware of an amended TRO solely because it was aware of the original TRO and that the original was amended.  159 F.3d at 1318.

The Court and ADT relied on an email that was received by Ken Wiesenfeld before he was a NorthStar director and when he was CFO of Security Networks, Vision's co-defendant in the underlying proceedings.  There was, however, no evidence that Wiesenfeld even saw the email (ADT never deposed him).  Indeed, in his declaration, Wiesenfeld attested that he "did not negotiate the terms of, or approve, the injunction because it did not govern Security Networks." DE 415-13 ¶ 7.  His knowledge cannot be imputed to NorthStar anyway under applicable law. DE 434 at 11-12.

Finally, the Court and ADT relied on the "K&L Gates Memo" for actual notice.  Report at 19-20.  In that 26-page memo, NorthStar counsel K&L Gates devoted two paragraphs to the ADT-Vision litigation.  DE 415-7.  The first paragraph summarizes ADT's allegations in the First Lawsuit.  There is one sentence about the First Injunction, stating that it requires "Vision to identify its agents to consumers and to cease making false claims about ADT."  *Id*.  The second

paragraph discusses ADT's allegations in the Second Lawsuit and notes that Vision is agreeing to "a modification to the prior injunction prohibiting Vision Security from engaging in certain training and other practices." *Id*.

While ADT disputes that the Vision transaction was just an asset purchase, the evidence showed that NorthStar viewed it as just an asset purchase and there is no evidence that anyone at NorthStar read the memo. *See* DE 416-2 at 62:15-19; 63:3-5; DE 416-3 at 55:16-20. Moreover, general knowledge of the litigation between Vision and ADT is not actual notice. *See Eli Lilly & Co. v. Premo Pharmaceutical Laboratories*, 1987 WL 123998, *3-4 (D.N.J. Mar. 27, 1987) (explaining that "a person cannot be held in contempt unless he had notice of the injunction," and that "[w]hether 'constructive knowledge' is a sufficient basis for holding a person in contempt is, at best, questionable.") (Alteration in original; citation omitted).[2]

The K&L Gates memo does not address that any injunction from the First Lawsuit would remain in effect, nor does it address most of the specific terms of the injunctions.

## II.   **NorthStar will be irreparably harmed without a stay**.

After three years of actively litigating these proceedings, primarily about whether NorthStar had due process, the Eleventh Circuit should decide that issue before further litigation. Should NorthStar prevail on appeal a second time, it would mean that NorthStar did not have due process in being bound by the injunction. There is no compelling reason why NorthStar should be further deprived of due process before the Eleventh Circuit decides the issue. Indeed, the damages phase of these proceedings involves several experts and fact witnesses, and a trial. That

---

[2] The Supreme Court has recognized that a non-party who succeeds to specific property will be subject to a prior judgment pertaining to that property. *See Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008). NorthStar bought customer accounts, and if those accounts were governed by the Second Injunction, NorthStar would likely be required to comply with those provisions. The Second Injunction, however, governs only Vision's sales practices, and NorthStar did not buy those.

7

is a large burden to bear before the issue of whether NorthStar is properly before the Court for contempt.

**III.     ADT will not be prejudiced by a stay.**

These proceedings concern only past conduct.  There is no prejudice to ADT in waiting for resolution of NorthStar's appeal to proceed, as ADT has already sustained the alleged damages.

**IV.     Avoiding unnecessary litigation at great expense to litigants serves the public interest.**

Proceeding in this matter without a stay pending NorthStar's appeal will result in potentially unnecessary litigation at great expense to the parties, including the depositions of expert damage witnesses.  The public interest will be served by a stay that eliminates such unnecessary litigation and the attendant cost.  Further, affording NorthStar proper due process to test on appeal whether it should be before this Court is in the public's interest.

<u>**CONCLUSION**</u>

The Court's determination that NorthStar is bound by the Second Injunction is a threshold finding that dictates whether there can be contempt proceedings against NorthStar. Having the Eleventh Circuit rule on that determination will allow the parties and Court to avoid the time and expense of a damages trial with expert testimony.   ADT, which chose this procedural path, is not prejudiced, as its alleged damages have already been sustained.  For these reasons, NorthStar seeks a stay of the proceedings pending its appeal.

<u>**Local Rule 7.1(a)(3) Certification**</u>

Undersigned counsel conferred with counsel for all parties and non-parties who may be affected by the relief sought in the motion.  Counsel for ADT does not agree to the relief sought

in this motion.

Dated:  May 13, 2019                                   Respectfully submitted,

                                                      **SHUTTS & BOWEN LLP**
                                                      *Attorneys for NorthStar Alarm Services LLC*
                                                      525 Okeechobee Boulevard, Suite 1100
                                                      West Palm Beach, FL  33401
                                                      Telephone:  (561) 835-8500
                                                      Facsimile:  (561) 650-8530

                                                      By*:*      */s/ Matthew R. Chait*
                                                               **Matthew R. Chait**
                                                               Florida Bar No. 17657
                                                               Email:  mchait@shutts.com
                                                               **Eric C. Christu**
                                                               Florida Bar No. 434647
                                                               Email: echristu@shutts.com
                                                               **Jonathan P. Hart**
                                                               Florida Bar No. 55982
                                                               Email:  jhart@shutts.com

                                                      and

                                                      **BRUCE S. ROGOW, P.A**.
                                                      *Attorneys for NorthStar Alarm Services LLC*
                                                      100 N.E. 3rd Avenue, Suite 1000
                                                      Ft. Lauderdale, FL 33301
                                                      Telephone:  (954) 767-8909

                                                               **Bruce S. Rogow**
                                                               Florida Bar No. 067999
                                                               Email:  brogow@rogowlaw.com
                                                               **Tara A. Campion**
                                                               Florida Bar No. 0090944
                                                               Email:  tcampion@rogowlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of May 2019 I caused a true and correct of the foregoing to be served by the CM/ECF service to counsel of record as listed below:

*Counsel for ADT LLC*
C. Sanders McNew, Esq.
McNew P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, FL 33431
Tel:  (561) 299-0257
Email:  mcnew@mcnew.net

*Counsel for ADT LLC*
Richard Sander, Esq.
Kali R. Backer, Esq.
Eric J. Hobbs, Esq.
Shook, Hardy & Bacon
1660 17th Street, Suite 450
Denver, CO 80202-1254
Tel: (303) 285-5300
Email:  ehobbs@shb.com
Email:  kbacker@shb.com
Email:  rsander@shb.com
Email:  jjbarker@shb.com
*Admitted Pro Hac Vice*

*Counsel for Security Networks, LLC*
Scott W. Atherton, Esq.
Harris Seth Nizel, Esq.
Atherton Law Group, P.A.
224 Datura Street, Suite 815
West Palm Beach, FL 33401
Tel:  (561) 293-2530
Email: scott@athertonlg.com
Email: harris@athertonlg.com
Email: e-service@AthertonLG.com

*Counsel for Vision Security, LLC
and Robert Harris*
John M. O'Bryan, Esq.
Meghan E. Tepas, Esq.
Terrance J. Sheahan, Esq.
Freeborn & Peters, LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60660
Tel:  (312) 360-6580
Email: jobryan@freeborn.com
Email: mboyer@freeborn.com
Email: mtepas@freeborn.com
Email: tsheahan@freeborn.com
*Admitted Pro Hac Vice*

*Counsel for Vision Security, LLC*
*and Robert Harris*
Peter Martin Bernhardt, Esq.
Courtney G. Tito, Esq.
McDonald Hopkins LLC
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401
Tel:  (561) 472-2121
Email: pbernhardt@mcdonaldhopkins.com
Email:  jlesson@mcdonaldhopkins.com
Email:  wpbpleadings@mcdonaldhopkins.com
Email:  ctito@mcdonaldhopkins.com
Email:  ddoran@mcdonaldhopkins.com
Email:  jpowell@mcdonaldhopkins.com

*Counsel for Vision Security, LLC*
Sonny J. Olsen, Esq.
Axiom Legal
730 South Sleepy Ridge Drive , Suite 211
Orem, UT 84653
Tel:  (801) 960-3695
Email: sonny@axiom-legal.com
*Admitted Pro Hac Vice*

/s/ Matthew R. Chait
Counsel

## CASE NO. 19-10525

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### ADT LLC,

Appellee,

vs.

### NORTHSTAR ALARM SERVICES, LLC

Appellant.

---

On Appeal from the United States District Court
for the Southern District of Florida

---

### APPELLANT'S INITIAL BRIEF

---

MATTHEW R. CHAIT
ERIC C. CHRISTU
JONATHAN P. HART
**SHUTTS & BOWEN LLP**
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL 33401
Telephone:  (561) 835-8500

BRUCE S. ROGOW
TARA A. CAMPION
**BRUCE S. ROGOW, P.A.**
100 N.E. 3rd Avenue, Suite 1000
Ft. Lauderdale, FL 33301
Telephone: (954) 767-8909

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, undersigned counsel for Appellant hereby certifies that the following is a complete list of persons and entities known to the Appellant who may have an interest in the outcome of this appeal:

1)      ADT LLC – Plaintiff in 9:12-cv-81120-DTKH

2)      Atherton Law Group, P.A. – Trial counsel for Security Networks, LLC

3)      Atherton, Scott W. – Trial counsel for Security Networks, LLC

4)      Axiom Legal – Trial counsel for Security Networks, LLC and Vision Security, LLC

5)      Bernhardt, Peter Martin  - Trial counsel for Security Networks, LLC, Vision Security, LLC and Robert Harris

6)      Bloor, Jeremy R. – Trial counsel for Robert Harris

7)      Brown, Sean K. – Trial counsel to Vision Security, LLC

8)      Bruce S. Rogow, P.A. – Appellate counsel for NorthStar Alarm Services, LLC

9)      Campion, Tara A. – Appellate counsel for NorthStar Alarm Services, LLC

10)      Chait, Matthew R. – Trial and appellate counsel for NorthStar Alarm Services, LLC

11)      Christensen, Jason – NorthStar Alarm Services, LLC

12)   Christu, Eric C. – Trial and appellate counsel for NorthStar Alarm Services, LLC

13)   Freeborn & Peters, LLP – Trial counsel for Vision Security, LLC

14)   Harris, Robert – Respondent in 9:12-cv-81120-DTKH

15)   Hart, Jonathan P. – Trial counsel for NorthStar Alarm Services, LLC

16)   Judge Daniel T.K. Hurley – Trial Judge in 9:12-cv-81120-DTKH

17)   Judge William Dimitrouleas - – Trial Judge in 9:12-cv-81120-DIMITROULEAS

18)   Magistrate Judge James M. Hopkins – Magistrate Judge in 9:12-cv-81120-DTKH

19)   Magistrate Judge William Matthewman - – Magistrate Judge in 9:12-cv-81120- DIMITROULEAS

20)   McDonald Hopkins LLC – Trial counsel for Security Networks, LLC, Vision Security, LLC and Robert Harris

21)   McNew, C. Sanders – Trial counsel for ADT LLC

22)   McNew P.A. – Trial counsel for ADT LLC

23)   Meade Tito, Courtney G. – Trial counsel to Security Networks, LLC, Vision Security, LLC and Robert Harris

24)   Nizel, Harris Seth – Trial counsel for Security Networks, LLC

25)   NorthStar Alarm Holding Company

26) Noble, J. Daniel – NorthStar Alarm Services, LLC

27) O'Bryan, John M. – Trial counsel for Vision Security, LLC

28) Olsen, Sonny J. – Trial counsel for Vision Security, LLC

29) Rogow, Bruce S. – Appellate counsel for NorthStar Alarm Services,

LLC

30) Security Networks, LLC – Defendant in 9:12-cv-81120-DTKH

31) Sheahan, Terrance J. – Trial counsel for Vision Security, LLC

32) Shutts & Bowen LLP – Trial and appellate counsel for NorthStar Alarm

Services, LLC

33) Tepas, Meghan E. – Trial counsel for Vision Security, LLC

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument would assist the Court. The question of whether an injunction can be imposed upon a non-party who is neither in privity with, nor a successor to, a previously joined entity, is an unusual issue. The facts of the non-relationship here provide an opportunity for better understanding of the issues presented. In addition, the question of what constitutes a "*de facto merger*" also raises a unique issue that would benefit from oral argument.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................................C1-C3

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CITATIONS   ................................................................................ iv-v

STATEMENT OF JURISDICTION..........................................................................1

ISSUES PRESENTED FOR REVIEW ....................................................................2

STATEMENT OF THE CASE..................................................................................3

    I.     Procedural History.................................................................................3

    II.    Facts In Record Below ........................................................................9

          A.    The First Evidentiary Hearing ..................................................9

          B.    The Second Evidentiary Hearing .............................................10

SUMMARY OF THE ARGUMENT .......................................................................14

STANDARD OF REVIEW  ....................................................................................16

ARGUMENT ..........................................................................................................16

    I.     THE DISTRICT COURT VIOLATED THIS COURT'S MANDATE
          BY GIVING ADT A SECOND CHANCE TO PROVE ITS CASE
          AGAINST NORTHSTAR. ............................................................. 16

    II.    A NON-PARTY TO A FEDERAL LAWSUIT NOT IN PRIVITY
          WITH AN ENJOINED PARTY AND WHOSE INTERESTS WERE
          NOT REPRESENTED IN THE LAWSUIT CANNOT BE BOUND
          BY AN INJUNCTION ENTERED IN THAT PRIOR LAWSUIT.. 19

III.   THE VISION TRANSACTION DID NOT SATISFY THE ELEMENTS OF A DE FACTO MERGER ...................................... 24

IV.   THE DISTRICT COURT ERRED IN FINDING THAT NORTHSTAR HAD ACTAL NOTICE OF THE SECOND INJUNCTION .............26

    A. The District Court Did Not Apply The Correct Law .........................26

    B. NorthStar's Awareness Of The First Injunction Is Not Actual Notice Of The Second Injunction ..................................................................29

    C. Even If Knowledge Of The First Injunction Were Knowledge Of The Second Injunction, NorthStar Did Not Have Actual Notice..............31

        1. ADT did not prove that Wiesenfeld had knowledge, and his knowledge could not be imputed anyway.................................31

            a.  There is no evidence of Wiesenfeld's knowledge..........31

            b.  Under Utah law, Wiesenfeld's 2013 knowledge cannot later be imputed to NorthStar .........................................31

        2. The K&L Gates memo does not create actual notice ..............32

V.   EVEN IF NORTHSTAR IS A SUCESSOR TO VISION, NORTHSTAR DID NOT SUCCEED TO THE SUBJECT MATTER OF THE AMENDED INJUNCTION .................................................35

CONCLUSION .......................................................................................36

CERTIFICATE OF COMPLIANCE ......................................................37

CERTIFICATE OF SERVICE ...............................................................38

# <u>TABLE OF CITATIONS</u>

**Cases**

*ADT LLC v. NorthStar Alarm Services, LLC*,
    853 F.3d 1348 (11th Cir. 2017) .................................................................passim

*Am. Semiconductor, Inc. v. California Assignments LLC*,
    2013 WL 5937968 (N.D. Cal. Oct. 30, 2013) ...............................................21

*Amjad Munim, M.D., P.A. v. Adar*,
    648 So.2d 145 (Fla. 4th DCA 1994)........................................................25, 26

*Bud Antle, Inc. v. Eastern Foods, Inc.*,
    758 F.2d 1451 (11th Cir. 1985) .........................................................20, 25, 26

*eComSystems, Inc. v. Shared Marketing Servs., Inc.*,
    2012 WL 171083 (M.D. Fla. Jan. 20, 2012)..................................................20

*EEOC v. Joe's Stone Crab, Inc.*,
    220 F.3d 1263 (11th Cir. 2000) ....................................................................18

*Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*,
    843 F.2d 1378 (Fed. Cir. 1988) ....................................................................21

*Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*,
    1987 WL 123998 (D.N.J. Mar. 27, 1987)................................................34, 35

*Ga. Power Co. v. NLRB*,
    484 F.3d 1288 (11th Cir. 2007) ...............................................................26, 27

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*,
    417 U.S. 249 (1974).......................................................................................36

*Ind. Oil & Gas Co. v. Shelton*,
    79 Utah 384 (Utah 1932) ..............................................................................31

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985) ....................................................................16

iv

*Project B.A.S.I.C. v. Kemp*,
    947 F.2d 11 (1st Cir. 1991)........................................................14, 15, 27, 28

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982)......................................................................18

*Regal Knitwear v. NLRB*,
    324 U.S. 9 (1945).......................................................................5, 20

*Reliance Insurance Company v. Mast Construction Company*,
    159 F.3d 1311 (10th Cir. 1998) ....................................................29

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) ....................................................16

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..........................................................22, 23, 35

*Thomas v. Blue Cross & Blue Shield Ass'n*,
    594 F.3d 814 (11th Cir. 2010) ....................................................18

*Travelhost, Inc. v. Blanford*,
    68 F.3d 958 (5th Cir. 1995) ....................................................20, 26

*United Pharmacal Corp. v. United States*,
    306 F.2d 515 (1st Cir. 1962).......................................................21

*Vuitton et Fils S.A. v. Carousel Handbags*,
    592 F.2d 126 (2d Cir. 1979)...................................................33, 34

## STATEMENT OF JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Appellant seeks review of an order granting an injunction against Appellant, which continued an existing injunction against another company and modified that injunction in order to apply it to Appellant.

The Court previously determined that it had jurisdiction over a similar order, which it vacated.  *See* Case No. 16-15351 ("First Appeal"); *ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).  Following that order, the district court continued the proceedings and again modified the injunction to apply it to Appellant.  The Court has jurisdiction, just as it did in the First Appeal.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the mandate and Judgment issued by this Court in a prior appeal, Case No. 16-15351 ("First Appeal") terminated the contempt proceedings against non-party NorthStar and precluded the district court from allowing ADT a second chance to prove at an evidentiary hearing that NorthStar had knowledge of the subject injunction.

2.     Can a non-party to a federal lawsuit be enjoined by an injunction where the district court holds that the non-party was not in privity with the enjoined party and where the non-party's interests were not represented in the lawsuit when the district court entered the injunction?

3.     Can an entity that purchases certain assets from a party which is subject to a federal injunction be bound by that injunction under a "*de facto merger*" theory, where the enjoined party (the selling entity) was not dissolved and therefore there was no "*de facto merger*"?

4.     Did the district court err in concluding that ADT proved, by clear and convincing evidence, that NorthStar had actual notice of the subject injunction, as required by Rule 65?

5.     Can a successor entity be bound by an injunction where it did not succeed to the subject matter of the injunction?

## <u>STATEMENT OF THE CASE</u>

### I.   <u>Procedural History</u>

This appeal concerns alarm company ADT LLC's ("ADT") attempt to bind

its competitor, non-Party NorthStar, to an injunction that was entered against another

competitor because NorthStar bought certain assets from the enjoined competitor.

ADT originally filed this action in 2012 against Defendants Vision Security,

LLC ("Vision") and Security Networks, LLC ("Security Networks"), alleging those

companies violated the Lanham Act in selling alarm services.  Vol 1 Doc 1 ("First

Lawsuit").  ADT, Vision, and Security Networks settled the suit in September 2013

by agreeing to entry of a negotiated injunction which governed how Vision's

representatives conduct sales presentations. Vol 1 Doc 104 (the "First Injunction").

ADT later filed a second lawsuit against Vision, but not Security Networks (the

"Second Lawsuit").  On December 17, 2014, as a result of the Second Lawsuit, the

district court in the First Lawsuit entered a new injunction that included additional

provisions not in the First Injunction.  Vol 1 Doc 107 (the "Second Injunction").

The district court did so "without making any findings or rulings, but on the

agreement of the parties." *Id.*

On December 11, 2015, ADT filed its *Application for an Order to Show Cause*

(the "Motion") [Vol 1 Doc 108] against NorthStar.  ADT argued that NorthStar

should be subject to the Second Injunction because NorthStar purchased certain assets from Vision and hired certain former Vision employees in January 2015.

On June 8, 2016, after an evidentiary hearing during which ADT questioned NorthStar CEO Jason Christensen and Vision CEO Robert Harris, the magistrate judge entered his *Report and Recommendation Regarding Plaintiff's Motion to Adjudge Non-Parties in Contempt of the Permanent Injunction (Vol 1 Doc 108)* (the "First Report"). Vol 3 Doc 146. The magistrate judge "reject[ed] ADT's argument that there is sufficient privity between Vision and Northstar [*sic*] to justify extending the injunction's prohibitions to NorthStar." Vol 3 Doc 146 at 6. The magistrate judge further found that "there is insufficient evidence to conclude that NorthStar's interests are so intertwined with Vision's that NorthStar should be bound by the injunction." *Id.* Nevertheless, the magistrate judge recommended enjoining NorthStar on the grounds that NorthStar was a successor to Vision by de facto merger. *Id.* at 6-10. Over NorthStar's Objection, the district court adopted the Report (the "First Injunction Order"). Vol 3 Doc 153. NorthStar appealed. Vol 3 Doc 165.

This Court vacated the First Injunction Order. First, the Court affirmed the district court's no-privity ruling: "NorthStar and Vision are not in privity." *ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (the

"First Appeal Opinion"). As a result, the Court held that "NorthStar cannot be bound by the injunction when it is not in privity with Vision Security...." *Id.* at 1349.

Second, the Court ruled that "[e]ven if Vision Security and NorthStar de facto merged, that NorthStar is a successor to Vision Security under state law does not mean that NorthStar is bound by a federal injunction issued against Vision Security." *Id.* at 1354.    The Court noted that Rule 65, not state law, governs the scope of a federal injunction and: (1) requires actual notice; and (2) precludes the Court from issuing an order "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Id.* at 1354-55 (quoting *Regal Knitwear v. NLRB*, 324 U.S. 9, 13, 65 S.Ct. 478 (1945)). The Court explained that the use of a de facto merger analysis in this case would violate both requirements of Rule 65:

> The district court made no finding that NorthStar had knowledge of the injunction against Vision Security, as required by Rule 65(d). The district court found that the interests of NorthStar were not represented when the injunction was negotiated, and it found that the sales practices at issue in this appeal developed "prior to, and independent of, NorthStar's relationship with Vision [Security]."

*Id.* at 1355.

Oral argument involved extensive discussion of whether the Court should vacate and remand for a retrial or to simply vacate the Injunction Order:

> MARTIN, J.:     So if your client [NorthStar] was not a party to the lawsuit that resulted in the injunction and it wasn't in privity with any party that was in that lawsuit,

|  |  |
|---|---|
|  | then why do we need to decide, I mean, why do we need to decide whether there was a de facto merger? |
| MR. ROGOW: | You don't need to decide that.  You can stop right there with a reversal of this order.  I think that the point that I'm trying to make is what happens then.  And Judge Pryor here is suggesting it goes back and it could be basically retried under -- |
| PRYOR, J.: | *I'm not saying retrial*. |
| MR. ROGOW: | -- with new evidence. |
| PRYOR, J.: | I'm saying that any party who has an injunction in their favor can always bring to the attention of the court and always move the court for an order to show cause why someone should not be held in contempt of that injunction and make a new record, right. |
|  | It may be that your client now has actual notice and does something in conjunction with someone like its president who has been held to be bound by the injunction.  It would make for a different case; that's not really before us. |
|  | It may be the best way.  *You may have convinced me that the answer is not really to remand it, but to just vacate this order and leave it at that*. |
| MR. ROGOW: | If there were new conduct and there was a new order to show cause, I would agree -- |
| PRYOR, J.: | Okay. |
| MR. ROGOW: | -- if there was a finding that they were in privity. |
| PRYOR, J: | That helps. |

Vol 7, Transcript of April 7, 2017 Oral Argument ("April 7 Tr.") at 12:2-13:13

(emphasis added).

6

After that exchange, ADT repeatedly requested a remand during its response argument.  *See id*. at 27:14-17 ("Well, then I believe that the remedy would be to vacate a[nd] remand so that the hole you've identified can be addressed by the District Court."); *id*. at 14:19:20 ("If the Court rules to vacate I think it should remand . . . ."); *id.* at 23:14-16 ("But I think the question of outright reversal, you know, throws the baby out with the bath water.").  The Court did not order a remand. ADT then filed a motion asking this Court to reconsider its decision and order a remand, which the Court denied.

On January 11, 2018, the magistrate judge issued a report and recommendation in which he concluded that the district court was prohibited by the mandate rule from conducting further proceedings.  Vol 3 Doc 346 at 9.  Thereafter, the case was reassigned to a new district judge.  Vol 3 Doc 347.  The district court rejected the magistrate judge's recommendation.

The district court acknowledged that "[t]he Eleventh Circuit agreed with the district court that NorthStar and Vision were not in privity."  Vol 3 Doc 355 at 5. The district court held, however, that the opinion "did not challenge or dispute the district court's determination that a de facto merger under state law occurred between NorthStar and Vision."  *Id.*  The district court concluded that by vacating the First Injunction Order, this Court "was putting the case in the same posture that

7

it was in prior to the entry of that order, essentially saying to the district court to start over on this particular order and do it right this time." *Id*. at 8.

The district court referred the case to Magistrate Judge Matthewman[1] for an evidentiary hearing "as to the issue of whether NorthStar had actual notice of the injunction as required by Fed. R. Civ. P. 65(d) . . . ." *Id*. at 12. On August 28, 2018, the magistrate judge held the evidentiary hearing, and on November 16, 2018, issued a *Report and Recommendation on the Issue of NorthStar's Knowledge of the Injunction* Vol 6 Doc 431 (the "Actual Notice Report"). The magistrate judge found that certain NorthStar board members were generally aware of the First Injunction, and that such general knowledge constituted Rule 65 actual notice of the Second Injunction. *Id.* at 6-10.

The district court adopted the *Actual Notice Report* over NorthStar's objection (the "Second Injunction Order"). Vol 7 Doc 439. The district court held that knowledge of the First Injunction was sufficient to constitute actual notice of the Second Injunction. *Id.* at 4. The district court then "h[eld] that NorthStar is bound by the injunction under the de facto merger theory." *Id*. The district court did not make findings to support its de facto merger ruling, but presumably was adopting the rationale in the vacated First Injunction Order. NorthStar filed its *Notice of Appeal* on February 5, 2019. Vol 7 Doc 441.

---

[1] Magistrate Judge Hopkins had since retired.

## II.   <u>Facts in Record Below</u>

### A.   The First Evidentiary Hearing

The relevant facts from the first evidentiary hearing were summarized by this

Court in the First Appeal Opinion:

- "In January 2015, Vision Security executed an asset purchase agreement with NorthStar."

-  "Under the agreement, NorthStar acquired from Vision Security 8,000 customer accounts to add to the 35,000 accounts NorthStar had before the agreement"

- NorthStar acquired certain assets related to the customer accounts, but did not acquire many others, such as cash, bank accounts, customer accounts, intellectual property, books of account and books of original entry, personnel records, or any insurance policies or associated causes of action

- "The agreement never mentioned the injunction in favor of ADT."

- NorthStar would hire four senior officers from Vision Security, including Vision's CEO, Rob Harris;

- Mr. Harris "became a member of the Board of Directors of NorthStar and received almost fourteen percent of its stock;"

- Harris oversaw seven or eight regional sales managers, but he also testified that his "primary role at NorthStar is involved in recruiting people to come work for NorthStar" and that he did not "personally do any sales training at NorthStar."

- NorthStar also hired between thirty and thirty-five of the 250 sales representatives of Vision Security.

- Vision Security terminated its sales force after it executed the agreement, but continues to service between 1,500 and 2,000 accounts

9

that Vision Security retained.

- NorthStar "was a much larger alarm company" than Vision that "existed for fourteen years before acquiring some of Vision's assets;"

- "NorthStar's sales tactics were clearly established prior to, and independent of, NorthStar's relationship with Vision;"

- There was no evidence that NorthStar had any relationship with Vision or that either entity controlled the other;" and

- "NorthStar did not have any involvement in the underlying litigation, and its interests were not represented when the injunction was negotiated."

*ADT*, 853 F.3d at 1350-53.  The Court noted that, "ADT offer[ed] no evidence that NorthStar knew about the injunction."  *See id.* at 1354.

### B.    The Second Evidentiary Hearing

ADT was afforded the opportunity to take discovery in preparation for its second evidentiary hearing.  ADT took the depositions of two NorthStar board members: Jason Christensen, NorthStar's then-CEO, and Greg Watts of NorthStar investor Goldman Sachs.  ADT offered those depositions, as well as Mr. Christensen's testimony from the first evidentiary hearing, at the second evidentiary hearing.  *See* August 28, 2019 Hearing Tr. at 82:7-84:22.  ADT also offered 15 exhibits, 5 of which were admitted over NorthStar's objection.  *See* Vol 7 Doc 439 at 7.

Watts characterized NorthStar's investigation of Vision as "high level" and that NorthStar did not discuss the Vision injunction because NorthStar was

purchasing only assets and never considered that NorthStar could be bound by the injunction.  Vol 5 Doc 416-2 at 30:14-31:22; 41:23-43:1.  He explained that he "wasn't concerned with what Vision had done in the past.  We weren't acquiring Vision.  We were just acquiring – NorthStar was just acquiring assets . . . ."  *Id.* at 63:21-25.  Watts explained that NorthStar reviewed the ADT-Vision litigation which:

> related to deceptive sales practices in general because after the transaction was going to be completed, the asset purchase, I wanted to make sure that to the extent that NorthStar hired any senior management team members that those types of activities would not be tolerated at NorthStar.  So we just wanted to understand what the root of the litigation was.

*Id.* at 30:14-22.  Christensen similarly testified that information regarding injunctions would not have been relevant or important to NorthStar because NorthStar was purchasing only certain assets.  Vol 6 Doc 416-3 at 37:6-20; 61:7-21.

Watts further testified that:

- He never saw the First Injunction.  Vol 6 Doc 416-3 at 68:10-23.

- Prior to NorthStar's executing the APA, he was not aware of what any injunction against Vision required.   Vol 6 Doc 416-2 at 43:2-44:14.

- NorthStar never sought a legal opinion as to whether it was bound by a Vision injunction.   Vol 6 Doc 416-2at 79:15-80:12.

- He would not have expected his counsel to obtain a copy of the First Injunction.  Vol 6 Doc 416-2 at 69:15-18.

Christensen testified that he:

- Never saw the Second Injunction prior to this litigation. Vol 6 Doc 416-3 at 71:3-12; 79:16-80-12.[2]

- Was not aware of the terms of either injunction prior to executing the APA. Vol 6 Doc 416-3 at 80:2-81:3.

- Knew that prior to executing the APA, Vision's litigation with ADT was resolved, but did not know that the resolution involved an injunction. Vol 6 Doc 416-3 at 18:18-19:5; 51:23-52:2.

- Has no recollection of anyone discussing the injunction prior to executing the APA. Vol 6 Doc 416-3 at 26:25-27:16; 30:21-31:8.

- Never reviewed any pleadings from the Vision litigation and did not know whether anyone on the NorthStar management team did. Vol 6 Doc 416-3 at 18:25-19:10.

- Confirmed that the due diligence regarding the ADT litigation was not because of the injunction. Vol 6 Doc 416-3 at 23:17-25:1.

ADT also offered into evidence, over NorthStar's objection, the declaration of Ken Wiesenfeld, the former CFO of Security Networks (a defendant in the First Lawsuit but not the Second Lawsuit), who joined the NorthStar board in 2014, after the First Lawsuit was resolved.[3] Vol 6 Doc 431 at 8. In addition, over NorthStar's objection, the magistrate judge admitted ADT's Exhibit 15 [Vol 4 Doc 415-15], a September 25, 2013 email from Security Networks' litigation counsel to an unidentified recipient and copying Wiesenfeld. The email has several attachments,

---

[2] Exhibit 9 in the Christensen Deposition (Vol 5 Doc 416-3 at 3) was the December 17, 2014 Order [Vol 1 Doc 107], which was ADT's Exhibit 6.

[3] NorthStar had originally filed the declaration in opposition to ADT's motion for summary judgment.

including a draft of the First Injunction.  ADT chose not to depose Wiesenfeld, so there is no evidence that Wiesenfeld received, opened, or read the email or its attachments.  Wiesenfeld attested in his declaration that he "did not negotiate the terms of, or approve, the injunction because it did not govern Security Networks." Vol 3 Doc 415-13 ¶ 7.  Wiesenfeld's employment with Security Networks ended in May 2014, prior to his joining the NorthStar board in November 2014.  *Id.* ¶ 8-9.

There is no evidence that anyone at NorthStar ever saw an executed copy of either injunction, or that anyone other than Wiesenfeld ever saw a draft of the injunction.

## SUMMARY OF ARGUMENT

Several independently dispositive reasons require reversal.

First, this Court vacated the First Injunction Order and did not remand the case. The district court violated the mandate rule by giving ADT a second chance to prove its case.

Second, there was no reason to allow ADT a second opportunity to prove its case. The Court already explained that non-parties must be in "privity" with an enjoined party because that ensures due process and that a non-party is not denied its day in court. *ADT*, 853 F.3d at 1352. The Court affirmed the district court's ruling that "NorthStar and Vision are not in privity." *Id*. at 1352. That ruling is dispositive even if NorthStar had actual notice of the Second Injunction.

Third, the district court's holding that NorthStar and Vision engaged in a "de facto merger" was error. The Second Injunction Order contains no factual findings to support its de facto merger ruling, nor did the district court identify which state's law of de facto merger it applied. The First Injunction Order applied Florida law. For a de facto merger, Florida specifically requires the dissolution of the predecessor entity. Vision, the predecessor entity, has not dissolved.

Fourth, the district court erred in holding that NorthStar had actual notice of the Second Injunction. The law requires that "[t]hose who would suffer [contempt] penalties for disobedience must be aware not merely of an order's existence, but also

of the fact that the order is directed at them." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991).  The magistrate judge acknowledged this rule, but did not apply it.  Actual Notice Report at 16.  There is no evidence that NorthStar knew, or even considered, that either injunction applied to it because it was only buying specific assets from Vision, not buying Vision itself.

Additionally, the district court erred in concluding that the First Injunction and Second Injunction were similar enough that being generally aware of the existence of the First Injunction constitutes actual notice of the Second Injunction.  General knowledge of an earlier order is not actual notice of a later order.

Finally, even assuming NorthStar can be enjoined by the Second Injunction, a non-party can be bound by an injunction only if it succeeded to the subject matter of the injunction.  The subject matter of the Second Injunction is Vision's sales practices vis a vis prospective customers.  NorthStar had its own established sales practices and purchased only *existing* accounts from Vision.  NorthStar did not succeed to the subject matter of the Second Injunction.

The Second Injunction Order should be vacated with instructions to dismiss these contempt proceedings with prejudice.

## STANDARD OF REVIEW

NorthStar seeks review of the now-extant Second Injunction Order, an interlocutory order imposing the Second Injunction against NorthStar.  The standard of review on appeal of an order granting, continuing, or modifying an injunction is a clear abuse of discretion, considering the four prerequisites for preliminary injunctions: substantial likelihood of success, substantial threat of irreparable injury, balance of harms, no disservice to public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000)(*en banc*).  An error of law would be reviewed *de novo*.

## ARGUMENT

### I.
### THE DISTRICT COURT VIOLATED THIS COURT'S MANDATE BY GIVING ADT A SECOND CHANCE TO PROVE ITS CASE AGAINST NORTHSTAR.

"The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion, and the circumstances it embraces." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985) (internal citations omitted).  The trial court "is bound to follow the appellate court's holdings, both expressed and implied." *Id*.

In vacating the Injunction Order, this Court explained:

We divide our discussion in two parts. We first explain that NorthStar and Vision are not in privity. We then explain that NorthStar may not be bound by the injunction under the theory of de facto merger because NorthStar lacked notice of the injunction.

16

*ADT, LLC*, 853 F.3d at 1352.  In so holding, the Court noted that ADT offered no evidence that NorthStar knew about the Second Injunction, that the NorthStar-Vision asset purchase agreement did not disclose the Second Injunction, and that executives of NorthStar and Vision who testified at the evidentiary hearing offered no testimony that NorthStar knew about the Second Injunction.  *Id*. at 1354.  The Court did not instruct the district court to further address NorthStar's knowledge.

During oral argument, the Court considered whether remand would be appropriate.  ADT asked for remand multiple times.  Judge Pryor commented, however, that NorthStar's counsel "may have convinced me that the answer is not really to remand it, but to just vacate this order and leave it at that."  The Court did not order a remand and thus ended the proceedings against NorthStar.

Post-mandate, the district court nevertheless reasoned that the proceedings could continue because the vacated Injunction Order was an interlocutory order.  Vol 3 Doc 355 at 9.  The district court's analysis ignores the fact that non-party NorthStar was before the district court pursuant *only* to the Show Cause Order.  In that order, the district court ordered NorthStar to show cause why it "should not be held in contempt for violating the permanent injunction, based on their privity with Defendant Vision as successors in interest…."  Vol 3 Doc 115 at 2.  This Court ruled in the First Appeal Opinion that NorthStar was *not* in privity with Vision, nor bound by the Second Injunction, and vacated the Injunction Order.  *ADT, LLC*, 853 F.3d at

17

1350.  NorthStar therefore prevailed on the Show Cause Order, which is a final order.

*See, e.g.*, *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 818 (11th Cir. 2010) ("It is well-settled that we have jurisdiction to review the denial of a motion for an order to show cause why a party should not be held in contempt because it is a final order.").

The district court also reasoned that the proceedings against NorthStar should continue because this Court vacated the Injunction Order based on the absence of a factual finding (*i.e.*, NorthStar's actual notice of the Second Injunction). *See* Vol 3 Doc 355 at 9 (citing *Pullman-Standard v. Swint*, 456 U.S. 273 (1982) and *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000)).[4]  Those cases were remanded where a district court failed to make a finding because of an "erroneous view of the law."  The district court here did not fail to find notice.  Rather, "ADT offer[ed] no evidence that NorthStar knew about the injunction."  *ADT, LLC*, 853 F.3d at 1354.[5]  Moreover, unlike in this case, in *Pullman* and *Joe's Stone Crab*, the Supreme Court and this Court, respectively, expressly remanded to make the required findings.

---

[4]  ADT cited those same cases to this Court in its *Motion for Clarification.*

[5]  The district court noted that NorthStar did not challenge notice in the district court, but NorthStar had no burden to disprove something ADT, the moving party, failed to prove.

The district court erred in giving ADT a second bite at the apple to prove its case against NorthStar. The district court violated the mandate of the First Appeal, and the Court should therefore vacate the Second Injunction Order and direct that the proceedings against NorthStar be dismissed with prejudice.

## II.
### A NON-PARTY TO A FEDERAL LAWSUIT NOT IN PRIVITY WITH AN ENJOINED PARTY AND WHOSE INTERESTS WERE NOT REPRESENTED IN THE LAWSUIT CANNOT BE BOUND BY AN INJUNCTION ENTERED IN THAT PRIOR LAWSUIT.

This Court already held that "[e]ven if Vision Security and NorthStar de facto merged, that NorthStar is a successor to Vision Security under state law does not mean that NorthStar is bound by a federal injunction issued against Vision Security." *ADT*, 853 F.3d at 1354. That is because "[t]he question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law." *See Id.* (*quoting Additive Controls*, 154 F.3d at 1355). By its plain terms, Rule 65 does not include "successors" among those who may be bound by an injunction.

Pursuant to Federal Rule of Civil Procedure 65(d), NorthStar can be bound only if it was in privity with Vision. *Id*. at 1352. Whether viewed under Rule 65 or res judicata principles, privity ensures that "everyone should have his own day in court." *Id*. (internal quotation marks and citation omitted). Because the Court already determined there is no privity between NorthStar and Vision, Rule 65 does

not permit the district court to bind NorthStar to the Second Injunction.

This Court already ruled that whether a de facto merger occurred is irrelevant because, *inter alia*, while one could be a successor under state law, under Rule 65, "[a]n order may not be 'so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'" *ADT,* 853 F.3d at 1355 (quoting *Regal Knitwear*, 324 U.S. at 13, 65 S.Ct. 478). De facto merger is a "legal fiction" used to make one liable for the debts of another. *See eComSystems, Inc. v. Shared Marketing Servs., Inc.*, 2012 WL 171083, at 5 n.2 (M.D. Fla. Jan. 20, 2012); *see also Bud Antle, Inc. v. Eastern Foods, Inc*., 758 F.2d 1451, 1456 (11th Cir. 1985) (noting that de facto merger is an exception used to "hold the buying corporation liable for the seller's debts"). Thus, at most de facto merger could result in NorthStar's liability for Vision's debts. But ADT is not looking to hold NorthStar liable for Vision's debts; rather, ADT seeks to have NorthStar held in contempt for its own conduct in alleged violation of Vision's injunction. Vol 1 Doc 108 at 24-25. De facto merger is not a conduit for such a ruling.

The Second Injunction governed Vision's conduct. It did not bar Vision from selling its assets, and a purchaser of those assets should not be bound by the Second Injunction in its independent conduct. *See, e.g., Travelhost, Inc. v. Blanford*, 68 F.3d 958, 962 (5th Cir. 1995) (reversing order that applied injunction against Blandford

from publishing Passport Magazine to non-parties who purchased assets from Blandford, explaining "[t]he injunction did not prohibit Blandford from selling assets he owned. In addition, it did not, and could not, prohibit other persons from publishing "Passport" unless they were persons acting with Blandford within the meaning of Rule 65(d)."); *Am. Semiconductor, Inc. v. California Assignments LLC*, No. 12-CV-06138-LHK, 2013 WL 5937968, at *5-6 (N.D. Cal. Oct. 30, 2013) (refusing to apply injunction to non-party purchaser of assets, explaining: "Under such a rule, all entities that transact with parties bound by an injunction would presumably be bound by the injunction. Such a rule does not comport with the Supreme Court's instruction that courts may not extend the reach of an injunction 'so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'") (citation omitted); *Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*, 843 F.2d 1378, 1381-82 (Fed. Cir. 1988) (refusing to apply injunction to non-party who purchased some but not all assets from the enjoined party because there was no showing that the non-party was an "instrumentality designed to evade the injunction"); *United Pharmacal Corp. v. United States*, 306 F.2d 515, 517-18 (1st Cir. 1962) (refusing to apply injunction to non-party even though enjoined party owned 30% of that entity because there was no showing that the non-party was the "agent, servant, subsidiary, tool, cat's paw or alter ego" of the enjoined party).

21

The district court's use of a subjective state law *de facto* merger theory to bind NothStar to a federal injunction also violates preclusion standards that the Supreme Court established in *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008). *Taylor* addressed when a non-party may be subject to a prior judgment and rejected an "amorphous" approach of "virtual representation:"

> [A] diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves. Most obviously, it could significantly complicate the task of district courts faced in the first instance with preclusion questions. An all-things-considered balancing approach might spark wide-ranging, time-consuming, and expensive discovery tracking factors potentially relevant under seven- or five-prong tests. And after the relevant facts are established, district judges would be called upon to evaluate them under a standard that provides no firm guidance.  Preclusion doctrine, it should be recalled, is intended to reduce the burden of litigation on courts and parties. In this area of the law, we agree, crisp rules with sharp corners are preferable to a round-about doctrine of opaque standards.

*Id*. at 902 (internal quotations and citations omitted; emphasis added).

*Taylor* set forth six defined exceptions where a non-party may be subject to a prior judgment despite not having had its own day in court:

1. "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."

2. "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment.  Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. These exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'"

3.  "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries,"

4.  "a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered."

5.  "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy."

6.  "in certain circumstances a special statutory scheme may 'expressly foreclos[e] successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process.'"

*Id.* at 893-94 (alterations in original; citations omitted).[6]

NorthStar does not fall within any of the *Taylor* exceptions.  *First*, as the district court proceedings demonstrate, NorthStar certainly did not agree to be bound by the Second Injunction.  *Second*, there was no "pre-existing 'substantive legal relationship'" between Vision and NorthStar at the time of entry of the Second Injunction.  Further, the judgment does not relate to a specific property right that NorthStar acquired from Vision, but rather dictates how the enjoined party must operate its business prospectively.[7]  *Third*, as this Court and the district court both

---

[6] The Court noted that the categories were a framework that may be organized differently.  553 U.S. at 893 n.6.

[7] The Second Injunction imposes specific requirements on Vision, including prohibiting false and other defined statements to ADT customers and requiring that

ruled, NorthStar was not "adequately represented" (or at all represented) by Vision in the underlying lawsuit. *See ADT*, 853 F.3d at 1353; Vol 3 Doc 146 at 6. *Fourth*, NorthStar did not assume control over the Vision lawsuit. *Fifth*, NorthStar is not re-litigating through a proxy. *Sixth*, there is no statutory scheme that forecloses NorthStar from defending against the notion that it is bound by the Second Injunction.

Because NorthStar does not fall within those exceptions, making the Second Injunction binding on NorthStar would deprive NorthStar of due process. NorthStar has the right to defend the underlying allegations and cannot be deprived of that right because the district court concluded that several factors could support a de facto merger ruling under a state's law.

## III.
## THE VISION TRANSACTION DID NOT SATISFY THE ELEMENTS OF A DE FACTO MERGER.

For the reasons discussed above, de facto merger is not a permitted basis for subjecting a non-party to a federal injunction that was entered against another. In any event, no de facto merger occurred here.

Initially, the district court did not discuss any of the factors it considered or what law it applied when it concluded that NorthStar and Vision de facto merged.

---

Vision sales representatives carry particular identification and introduce themselves in a particular manner. *See* Vol 1 Doc 108-1.

*See* Second Injunction Order.   To the extent the district court was relying on the vacated First Injunction Order, that was error.

The First Injunction Order adopted the magistrate judge's finding that, given Vision's ongoing business of owning 1,500 customer accounts, "it is not in a position to completely dissolve at this stage."  Vol 3 Doc 146 at 10 n.8.  The magistrate judge cited *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451 (11th Cir. 1985), to support its de facto merger finding, explaining that "[a]s the Eleventh Circuit has held, the dissolution element is satisfied if '[t]he seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.'"  Vol 3 Doc 146 at 9.  The magistrate judge, however, ignored the "liquidation" and "dissolution" requirements in *Bud Antle* and found only that Vision's "primary business ceased."  *Id*.  That was error.

To be sure, the magistrate judge cited *Amjad Munim, M.D., P.A. v. Adar*, 648 So.2d 145 (Fla. 4th DCA 1994).  But the 4th DCA reversed the trial court in that case because the dissolution requirement had not been met:

> In the case before us, there is no record evidence to establish that Munim, P.A. was dissolved, although it had essentially ceased operations other than receiving accounts receivable. Therefore, the technical requirement of dissolution of the predecessor corporation was not established.

648 So.2d at 154.   The 4th DCA ruled that mere cessation of operations is insufficient for a de facto merger.  *See id.  Amjad Munim* imposed successor liability

under a mere continuation standard, which was not at issue in the district court proceedings here and which this Court has recognized as a distinct theory.  *See Bud Antle*, 758 F.2d at 1451.

Because dissolution is a prerequisite for de facto merger, there was no de facto merger here.  Thus, NorthStar cannot be enjoined on the basis of a de facto merger with Vision.

## IV.
## THE DISTRICT COURT ERRED IN FINDING THAT NORTHSTAR HAD ACTUAL NOTICE OF THE SECOND INJUNCTION.

ADT has the burden to prove that NorthStar had actual notice of the Second Injunction by clear and convincing evidence.  Actual Notice Report at 8. In a contempt case, "clear and convincing evidence [i]s that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995) (citation and internal quotations omitted).

### A.     The district court did not apply the correct law.

A court can "make a finding of civil contempt – that is, willful disregard of the authority of [the] Court – only upon a showing that the alleged contempt is clear and convincing" and the moving party must establish, *inter alia*, that the order

violated was "*clear and unambiguous*."  *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis in original).  "A corollary of the requirement that orders enforceable through the contempt power be clear and unambiguous is that *those who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them*."  *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991) (emphasis added).

The First Circuit explained:

This tenet has not been stated frequently. Withal, the relative rarity of articulation testifies more to the sheer obviousness of the principle, *cf., e.g., M. de Cervantes, Don Quixote de la Mancha*, Pt. III, bk. 10 (1615) ("Forewarned, forearmed."), than to doubts about its legitimacy. *We think it is beyond serious question that, as a necessary prelude to a finding of contempt, the putative contemnor should have reasonably definite advance notice that a court order applies to it*.

\*\*\*

For a party to be held in contempt, it must have violated a clear and unambiguous order that *left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion*.

*Id*. (emphasis added).  "A court order, then, must not only be specific about what is to be done or avoided, but can only compel action from those who have adequate notice that they are within the order's ambit."  *Id*.  A court must "construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." *Ga. Power Co.*, 484 F.3d at 1291.

The district court acknowledged *Project B.A.S.I.C.* as the governing legal standard (Actual Notice Report at 16), but did not apply it. The district court did not distinguish between knowledge of the Second Injunction and "reasonably definite advance notice that [the injunction] applie[d]" to NorthStar.

There is no evidence that NorthStar even contemplated that it would be subject to an injunction against Vision, let alone had "reasonably definite advance notice" of its application to NorthStar. The district court found that NorthStar was "deliberate[ly] ignorant" by choosing not to "delve into the specifics of the injunction." Actual Notice Report at 22-23. That conclusion is contrary to the fact that NorthStar did not know or even consider that it could be bound. NorthStar directors Watts and Christensen explained that because NorthStar was only purchasing assets from Vision, NorthStar's review of Vision's litigation was just to ensure that any Vision employees who engaged in bad practices would not do the same at NorthStar if NorthStar hired them. Vol 4 Doc 416-2 at 30:7-22; Vol 4 Doc 416-3 at 37:6-20; 61:7-21. If NorthStar had no idea the injunction might apply to it, NorthStar had no reason to engage in more due diligence than it did.

Throughout the district court proceedings, ADT never cited a case in which a federal court held a non-party subject to an injunction because the non-party purchased specific assets from the enjoined party, absent a close relationship between those entities prior to the transaction. NorthStar is aware of no such case.

## B.    NorthStar's awareness of the First Injunction is not actual notice of the Second Injunction.

The settlement agreement between Vision and ADT provides that the parties were "***replacing*** [the First Injunction] with the [the Second Injunction]." Vol 1 Doc 108-5 at 2 ¶ 1 (emphasis added).  Only the Second Injunction is at issue in these proceedings.  *See* Vol 1 Doc 108.

Yet ADT did not offer evidence that NorthStar even knew the Second Injunction existed, and the district court did not cite any.  Instead, the district court concluded that NorthStar had actual notice of the December 2014 Second Injunction because it only "slightly revised" the First Injunction.  Actual Notice Report at 18. That is, the district court ruled that an alleged contemnor's awareness of a first order is actual notice of a second order if the orders are similar enough.

NorthStar is not aware of any case that states such a proposition and the district court cited none.  There could be no definable standard for determining how much similarity is enough. And regardless of how similar two orders are, knowledge of anything other than the order at issue would at most be constructive, not *actual*, notice.  There is also no evidence that anyone at NorthStar knew how similar or dissimilar the two injunctions were because there is no evidence that anyone at NorthStar knew that the Second Injunction had been entered.

*Reliance Insurance Company v. Mast Construction Company*, 159 F.3d 1311 (10th Cir. 1998), is instructive.  The plaintiff sought contempt damages against a

non-party bank for violating a restraining order against an account-holder by allowing him to make withdrawals.  The TRO was delivered to the bank on October 19.  *Id*. at 1313.  The TRO was amended on October 21.  *Id*. at 1314.  The plaintiff claimed that it attempted to hand deliver the amended TRO to the bank on October 21, but the bank refused service and directed that service be made at its central office. *Id.*  There was a dispute regarding whether service was made at the central office on October 24 or some time between October 28-31.  *Id*.  The bank allowed the enjoined account-holder to liquidate several accounts on October 25 and 26 in violation of the TRO, and the plaintiff therefore sought civil contempt damages against the bank. The district court rejected as a matter of law the plaintiff's argument that the bank had actual notice of the Second TRO because it knew that the First TRO had been amended.  The Tenth Circuit affirmed that ruling (though remanded because of the dispute over when the bank received the Second TRO).  *Id*. at 1318.  Similarly, that NorthStar may have generally known of the First Injunction does not establish that NorthStar had actual notice of the Second Injunction.

C.     **Even if knowledge of the First Injunction were knowledge of the Second Injunction, NorthStar did not have actual notice.**

    1.     **ADT did not prove that Wiesenfeld had knowledge, and his knowledge could not be imputed anyway.**

        a.     **There is no evidence of Wiesenfeld's knowledge.**

The district court concluded that former Security Networks CFO and eventual NorthStar director Wiesenfeld had actual notice of the First Injunction because he was copied on an email in September 2013 that included "a draft of the injunction." Actual Notice Report at 19.  NorthStar objected to the admission of the email.  The district court erred in admitting and relying on it because there was no evidence Wiesenfeld ever saw, let alone considered, the email.

        b.     **Under Utah law, Wiesenfeld's 2013 knowledge cannot later be imputed to NorthStar.**

Even if Wiesenfeld had actual notice of the First Injunction, his knowledge cannot be imputed to NorthStar.  Because NorthStar is a Utah limited liability company, Utah law governs this issue. Fla. Stat. § 605.0901 (2018).

Under Utah law, NorthStar cannot be charged with knowledge that Wiesenfeld acquired prior to joining NorthStar where such knowledge was not communicated to NorthStar. *See Ind. Oil & Gas Co. v. Shelton*, 79 Utah 384, 6 P.2d 1027, 1031 (Utah 1932) ("[A] a principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, *unless the agent actually communicates*

*his information to the principal*.") (emphasis added).   Wiesenfeld worked for Security Networks at the time of the email and was not yet a NorthStar director.  He never discussed the injunction with anyone at NorthStar when he joined its board in November 2014.   Vol 3 Doc 415-13 ¶¶ 9-11.   Under *Shelton*, his purported knowledge is not imputed.

The district court declined to apply *Shelton* because it "is not precedent in this District and was decided over 80 years ago."  Actual Notice Report at 21 n16. Florida law dictates that Utah law governs the question of imputation of Wiesenfeld's knowledge.  Fla. Stat. § 605.0901 (2018).  That *Shelton* was decided over 80 years ago should not matter – it is a binding decision of the Utah Supreme Court that has not been overturned.

## 2.      The K&L Gates memo does not create actual notice.

The district court also found that NorthStar had actual notice based on the so-called "K&L Gates memo."  Report at 19-20.  ADT submitted into evidence the December 30, 2014 memo from NorthStar and Goldman Sachs' counsel in the Vision transaction.  The 26-page memo contains two paragraphs regarding the two ADT-Vision lawsuits.  Vol 3 Doc 415-7.  NorthStar produced those paragraphs, but redacted the balance, which relates to other issues, based on attorney-client privilege. Neither Goldman Sachs nor NorthStar sought a legal opinion regarding whether NorthStar would be bound by either injunction entered against Vision.  Vol 5 Doc

416-2 at 79:15-80:12.  The first paragraph summarizes ADT's allegations in the First

Lawsuit.  There is one sentence about the First Injunction, stating that it requires

"Vision to identify its agents to consumers and to cease making false claims about

ADT."  *Id*.  The second paragraph discusses ADT's allegations in the Second

Lawsuit and notes that Vision is agreeing to "a modification to the prior injunction

prohibiting Vision Security from engaging in certain training and other practices."

*Id*.

Even if ADT disputes that the Vision transaction was just an asset purchase,

the evidence showed that NorthStar viewed it as just an asset purchase and there was

no evidence that anyone at NorthStar read the K&L Gates memo.  *See* Vol 5 Doc

416-2 at 62:15-19; 63:3-5; Vol 5 Doc 416-3 at 55:16-20.  The memo's broad

descriptions of the injunctions are not sufficient to establish actual notice.  *Vuitton*

*et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979), a case on which

ADT relied in the district court [Vol 6 Doc 421 at 11-12], confirms that a contemnor

must have more than a mere awareness of an injunction under Rule 65.  In *Vuitton*,

the district court entered an injunction prohibiting Carousel from selling counterfeit

bags.  592 F.2d at 128.  Vuitton later discovered that the owner of Carousel was

selling bags through another entity, Mirage, he owned with two others.  *Id.*  Vuitton

filed a contempt motion against all three individuals, which the district court denied

because all three individuals denied that they had been personally served with the

injunction.  *Id.*   The Second Circuit reversed and remanded, with the following instructions:

> Should Vuitton establish that the Mirage sale violated the terms of the decree, and that, with respect to any of the defendants, (1) he had ***actual knowledge of the terms of the injunction***, and (2) he was acting in concert with Carousel, the judge will consider whether plaintiff has not earned the right to an order in civil contempt and an award of proven damages.

*Id.* at 129 (emphasis added).   The court further explained that "*[s]o long as the defendants knew the court was enjoining them* and were cognizant of the terms of the injunction, they are responsible for the consequences."  *Id.* at n.3 (emphasis added).

Moreover, general knowledge of the litigation between Vision and ADT was not actual notice.  *See Eli Lilly & Co. v. Premo Pharmaceutical Laboratories*, 1987 WL 123998 (D.N.J. Mar. 27, 1987).   In *Premo*, the district court had entered an injunction pertaining to two patents, and the plaintiff filed a contempt motion against a company that purchased assets from the enjoined entity.  *Id.* at *2.  Although the purchaser knew of litigation concerning the assets, the court ruled that general knowledge of litigation did not impose a duty on the purchaser to investigate and learn about the injunction.  *Id.* at *3-4 (explaining that "a person cannot be held in contempt unless he had notice of the injunction," and that "[w]hether 'constructive

knowledge' is a sufficient basis for holding a person in contempt is, at best, questionable.") (alteration in original; citation omitted).[8]

The K&L Gates memo did not address that any injunction from the First Lawsuit would remain in effect, nor did it address most of the specific terms of the injunctions.  The memo did not create actual notice.

## V.
### EVEN IF NORTHSTAR IS A SUCCESSOR TO VISION, NORTHSTAR DID NOT SUCCEED TO THE SUBJECT MATTER OF THE AMENDED INJUNCTION.

ADT conceded in the district court that a non-party can be bound only if it "succeeded in interest to the subject matter of the prior decree."   Vol 3 Doc 143 at 16.  The Second Injunction addresses Vision's (and pending the outcome of this appeal, NorthStar's) sales practices *going forward*, not Vision's *existing* assets.  Yet NorthStar bought only existing assets.

The district court correctly found that NorthStar did not succeed to Vision's sales force, noting that "NorthStar's sales tactics were clearly established prior to,

---

[8] The *Eli Lilly* court noted that the purchaser could be held in contempt for actions occurring after receiving notice of the order in the contempt proceedings. 1987 WL 123998, at *4.  The same logic could not apply here.  The purchaser in *Eli Lilly* bought specific property (patents) that were subject to prior orders.  The Supreme Court has recognized that a non-party who succeeds to specific property will be subject to a prior judgment pertaining to that property.  *See Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008).  NorthStar bought customer accounts, and if those accounts were governed by the Second Injunction, NorthStar would likely be required to comply with those provisions.  The Second Injunction, however, governs only Vision's sales practices, and NorthStar did not buy those.

and independent of, NorthStar's relationship with Vision."  Vol 7 Doc 439 at 7 n.5. ADT alleged that NorthStar was engaging in the allegedly deceptive sales practices at issue below in 2014, well before the Vision transaction.  Vol 1 Doc 108 at 5 n.1. Because NorthStar did not "succeed" to Vision's sales force, even if NorthStar bought other assets from Vision, it cannot be enjoined by an injunction relating to Vision's sales force. *See Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 264 n.9 (1974) (holding that a successor who purchased some assets and hired some employees was not bound by collective-bargaining agreements signed by predecessor, noting that one may be "a successor for some purposes and not for others.").

## CONCLUSION

The district court correctly accepted that NorthStar is not in "privity" or "legally identified" with Vision. That means that NorthStar did not have its day in court, and therefore cannot be bound by the Second Injunction. Due process requires that NorthStar be entitled to defend itself in a lawsuit to which it is a party.  The district court's acceptance of the recommendation that a de facto merger occurred and is sufficient to bind NorthStar to the Second Injunction was incorrect.  A de facto merger is not a recognized basis for binding a non-party to an injunction. NorthStar believes that this Court already decided these issues in its favor.  Further, NorthStar asks this Court to rule that no de facto merger occurred between NorthStar

and Vision because Vision has not been dissolved and there is no continuity between Vision and NorthStar.  Finally, as a matter of law, NorthStar did not have actual notice of the Second Injunction where there was no evidence that NorthStar ever even saw it, let alone had "reasonably definite advance notice" that NorthStar was bound by that injunction.  NorthStar therefore requests reversal of the Actual Order, as it was erroneous as a matter of law.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify this Initial Brief complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because this Brief contains 10,161 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

I hereby certify this Initial Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font and Times New Roman theme.

<table>
<tr><td><u>/s/ Matthew R. Chait</u></td><td><u>/s/ Bruce S. Rogow</u></td></tr>
<tr><td>MATTHEW R. CHAIT</td><td>BRUCE S. ROGOW</td></tr>
<tr><td>FL Bar No. 17657</td><td>FL Bar No. 067999</td></tr>
<tr><td>ERIC C. CHRISTU</td><td>TARA A. CAMPION</td></tr>
<tr><td>FL Bar No. 434647</td><td>FL Bar No. 090944</td></tr>
<tr><td>JONATHAN P. HART</td><td>**BRUCE S. ROGOW, P.A.**</td></tr>
<tr><td>FL Bar No. 55982</td><td>100 N.E. 3rd Avenue, Suite 1000</td></tr>
<tr><td>**SHUTTS & BOWEN LLP**</td><td>Ft. Lauderdale, FL 33301</td></tr>
<tr><td>525 Okeechobee Boulevard, Suite 1100</td><td>Telephone: (954) 767-8909</td></tr>
<tr><td>West Palm Beach, FL 33401</td><td></td></tr>
<tr><td>Telephone:  (561) 835-8500</td><td></td></tr>
</table>

37

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 13, 2019, I electronically filed the foregoing Appellant's Initial Brief with the Clerk of Court using CM/ECF. I also certify that the foregoing Appellant's Initial Brief is being served on this day on all counsel of record identified on Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**SERVICE LIST**
*ADT LLC v. NorthStar Alarm Services, LLC*
19-10525

*Counsel for ADT LLC*

C. SANDERS MCNEW
**MCNEW P.A**.
2385 NW Executive Center Drive
Suite 100
Boca Raton, FL 33431
Tel:  (561) 299-0257
Fax: (561) 299-3705
mcnew@mcnew.net

*Counsel for Security Networks, LLC*

SCOTT W. ATHERTON
HARRIS SETH NIZEL
**ATHERTON LAW GROUP, P.A.**
224 Datura Street, Suite 815
West Palm Beach, FL 33401
Tel:  (561) 293-2530
Fax: (561) 293-2593
scott@athertonlg.com
harris@athertonlg.com

*Counsel for Vision Security, LLC*
*and Robert Harris*

JOHN M. O'BRYAN
MEGHAN E. TEPAS
TERRANCE J. SHEAHAN
**FREEBORN & PETERS, LLP**
311 South Wacker Drive, Suite 3000
Chicago, IL 60660
Tel:  (312) 360-6580
Fax:  (312) 360-6520
jobryan@freeborn.com
mboyer@freeborn.com
mtepas@freeborn.com
tsheahan@freeborn.com

*Counsel for Vision Security, LLC*
*and Robert Harris*

PETER MARTIN BERNHARDT
COURTNEY G. TITO
**MCDONALD HOPKINS LLC**
505 South Flagler Drive , Suite 300
West Palm Beach, FL 33401
Tel:  (561) 472-2121
Fax: (561) 472-2122
pbernhardt@mcdonaldhopkins.com
ctito@mcdonaldhopkins.com
jlesson@mcdonaldhopkins.com
ltimoteo@mcdonaldhopkins.com
wpbpleadings@mcdonaldhopkins.com

*Admitted Pro Hac Vice in District Court*

*Counsel for Vision Security, LLC*

SONNY J. OLSEN
**AXIOM LEGAL**
730 South Sleepy Ridge Drive
Suite 211
Orem, UT 84653
Tel:  (801) 960-3695
sonny@axiom-legal.com

*Admitted Pro Hac Vice in District Court*

/s/ Matthew R. Chait
Counsel